[No. 7821]

## CRAGHEAD V. McCULLOUGH.

1. NEGLIGENCE—*Physician and Surgeon.* To adopt for the reduction of a fracture the methods generally recognized by the profession as proper, is not negligence. (487, 488)

Where a surgeon is employed to treat an injury the law implies, in the absence of any express agreement, a contract on his part that he will use reasonable and ordinary care to accomplish the purpose of his employment. (489)

The surgeon does not warrant a cure, and is not responsible for a failure not resulting from the omission, on his part, of ordinary care, or the want of ordinary skill. (489)

The want of ordinary care is not established by the result alone, but must be shown by other evidence. (489)

The evidence examined and held sufficient to charge the surgeon with a failure to use ordinary care. (487, 490)

2. DAMAGES—*Evidence as to.* Action against a surgeon for negligence in reducing a fracture, by reason of which negligence a second fracture, and a second reduction, became necessary. The evidence held sufficient to warrant a verdict for one thousand dollars, and that such award was no evidence of passion or prejudice on the part of the jury. (490, 491)

3. ——*Excessive Verdict—Remittitur—Effect.* Plaintiff's voluntary remittitur of three hundred and fifty dollars from a verdict of one thousand dollars warranted, by the evidence, has not the effect to entitle defendant to a new trial. (491)

*Error to Denver District Court.*—Hon. JAMES H. TELLER, Judge.

Mr. JOHN T. BOTTOM and Mr. MILNOR E. GLEAVES, for plaintiff in error.

Mr. S. S. ABBOTT, for defendant in error.

Mr. JUSTICE GABBERT delivered the opinion of the court:

Plaintiff in error (defendant below), a physician and surgeon, was employed by defendant in error (plaintiff below) to reduce a fracture of his collar bone. He brought suit to recover damages from defendant which he claimed to have sustained as a result of the negligence of the doctor in treating the fracture. At the conclusion of the testimony, the defendant requested the court to instruct the jury to return a verdict in his favor, which was refused. The jury returned a verdict for plaintiff in the sum of one thousand dollars. The defendant filed a motion for a new trial, based upon the grounds, among others, that the verdict was excessive and the result of bias and prej-

udice; that the court erred in not directing the jury to return a verdict for the defendant; and that the verdict was against the law and the evidence. Pending the determination of this motion the plaintiff filed a remittitur in the sum of $350.00, in which it was stated, "leaving the verdict stand as six hundred fifty dollars." Defendant did not consent to this reduction of the verdict. The court denied the motion for a new trial, and ordered that judgment be entered in favor of plaintiff, and against defendant, in the sum of $650.00, which was accordingly done. The defendant brings the case here for review on error.

The negligence charged in the complaint is, that the defendant failed to use ordinary care in treating the fracture, by carelessly and negligently bandaging and placing the ends of the bone in such position that they·overlapped by more than one inch, and causing them to be held in that position until they adhered and solidified. It appears from the testimony that the fracture was oblique; and that defendant is a physician, and surgeon of many years experience in the practice of his profession, and a graduate of a medical college. He testified that when called to treat the fracture he recognized its character and described the steps he took in treating it, which it is not practical to state in detail, as from the record it appears he illustrated the method employed by referring to his arm and otherwise, but briefly, his treatment consisted in putting the ends of the bone in place, and bandaging and holding the arm and shoulder in a position with the aid of a fulcrum, the object of this treatment being to prevent overlapping. All the surgeons called as witnesses who testified on the subject, stated, that the method defendant employed was the usual and proper one to treat an oblique fracture of the clavicle. Employing the method to reduce a fracture generally

recognized by surgeons as proper is not negligence.—
*McGraw v. Kerr,* 23 Colo. App. 163, 128 Pac. 870; *Williams v. Poppleton,* 3 Ore. 139.

The real question involved, however, is whether there is testimony from which it can be fairly inferred that the defendant did not use ordinary care and diligence in treating the fracture. Not in the sense, however, that he did not employ the proper method, but in setting it improperly and causing it to be held in that position until the fragments adhered and became solidified, or in not exercising reasonable care to ascertain whether they remained in proper position. He testified that he placed the fragments in proper position, and from time to time after setting the bone visited his patient, and found it in place, having made examinations for this purpose; that later the plaintiff came to his office, which was about three months after the bone was set, when he found, for the first time, that it was overlapping, and so advised him, and requested him to return in a couple of days when he would have another surgeon make an examination. This examination was made and plaintiff advised that an operation should be performed. Arrangements for this purpose were made but plaintiff did not keep his engagement, and went to another doctor for an operation. This doctor testified that he made an examination of the clavicle, found some deformity from what had evidently been an oblique fracture in which the fragments had slipped past each other and healed in that position, and that bone adhesion was practically complete. Other surgeons testified to the effect that at this time the shoulder of the plaintiff was pressed forward, and in such position that the bone interfered with respiration and deprived him of the use of his arm, and that his crippled condition was very apparent. The surgeon who performed the operation to which we will refer later,

and also the doctor who assisted him, stated that in their opinion the defendant ought to have discovered earlier than he did that the condition of the fracture was not satisfactory; that the fragments were overlapping and that this condition could have been ascertained by the outline or the position of the shoulder. The plaintiff testified that after the defendant set the broken bone, he examined him from time to time and said he was doing fine, up to the time when he suggested that another surgeon should be consulted and an operation performed. He also stated that about one month after the bone was set he complained to the defendant that it hurt him to breathe, that defendant told him this was caused by the enlargement at the point of union which would bother him for a time, but would come out all right.

Without question, the fragments of the broken bone had not healed in a proper position, which had caused a deformity and condition which rendered the plaintiff a cripple, but counsel for defendant contend that there is not any testimony to establish that this condition was the result of negligence on the part of defendant. In the absence of a special contract, the law implies that a surgeon employed to treat an injury, contracts with his patient that he will exercise reasonable and ordinary care to accomplish the purpose for which he is employed. He does not warrant a cure and is not responsible for want of success, unless it results from a failure to exercise ordinary care, or from want of ordinary skill.—*Bonnet v. Foote,* 47 Colo. 282, 107 Pac. 252, 28 L. R. A. (N. S.) 136; *McGraw v. Kerr, supra; Leighton v. Sargent,* 27 N. H. 460, 59 Am. Dec. 388; *Patten v. Wiggin,* 51 Me. 594, 81 Am. Dec. 593. True, as stated in many well considered cases, the failure to exercise ordinary care in treating a fracture is not established by proof of the result alone, but must be shown by other evidence. Other

evidence that the condition of plaintiff, bearing on the question of negligence in treating the fracture was introduced. Surgeons testified that the position of the fragments ought to have been discovered by defendant while treating the plaintiff; that an examination would have disclosed the overlapping, and that the position of the shoulder indicated that the fracture was not healing in the proper position. The plaintiff also testified that he complained to the defendant about one month after the bone was set, that it hurt him to breathe, which from the testimony of the physicians, must have been caused by the clavicle not being in a proper position. So that there is substantial testimony from which to deduce one of two conclusions, either the defendant did not place the fragments in proper place in the first instance, or, if he did, he failed to exercise ordinary care from time to time to ascertain whether they remained in place and in keeping them in proper position.

It is next urged that the verdict was excessive and the result of bias and prejudice, and, for this reason, it should have been set aside, and a new trial granted. That an operation was necessary in order to relieve plaintiff from the condition he was in as the result of the overlapping of the fracture, must be conceded. The surgeon performing this operation testified that he made an incision down to the bone, and then by the use of instruments re-fractured it where the union had taken place, made a hole in each fragment and inserted a silver wire, and wired the bones together so that they would remain in place and prevent overlapping until a new union was effected. Considering the pain and suffering, expense and loss of time which this operation necessarily entailed, and also the fact that there was sufficient testimony from which it could be inferred that defendant had not exercised the degree of care the law required

in treating the fracture, it cannot be said that the verdict was excessive or in any sense the result of bias or prejudice. Counsel, however, contend that in an action to recover for a tort, the court cannot reduce the verdict of a jury merely because it is excessive, and that the only remedy in such case is to set the verdict aside and grant a new trial. It is also contended that where the amount awarded is so excessive as to be accounted for only on the ground of passion or prejudice on the part of the jury a remittitur will not cure the error, as such passion or prejudice will be deemed to have influenced the jury in determining the issues of fact. In the circumstances of this case neither proposition is applicable. The trial judge did not find that the award of one thousand dollars was excessive. He did not direct that the verdict would be set aside unless the plaintiff consented to remit the sum of $350.00. The reduction was voluntary on the part of plaintiff. There is ample testimony to sustain the findings of the jury that defendant was guilty of negligence. The testimony is sufficient to sustain the award of the jury. So that the record does not disclose that the jury were influenced by either passion or prejudice in finding the facts in issue in favor of plaintiff, or in making the award they did, consequently, the defendant was not prejudiced by the remittitur, and hence cannot complain.

Error is also assigned in ruling out testimony sought to be introduced on the part of defendant. This testimony was in no sense pertinent to any issue in the case and was therefore properly excluded.

Complaint is made that by instructions requested and given, the jury were prevented from considering contributory negligence on the part of plaintiff. The testimony did not tend in any manner to establish negligence of the plaintiff. It is also urged that instructions

given speak of want of skill of the defendant which was not an issue in the case. The objection is without merit. The method employed to reduce the fracture was proper, but there was testimony tending to prove that defendant, either from want of ordinary skill or through failure to exercise reasonable care, did not properly set the fracture in the first instance, or failed thereafter to discover that the fragments were not in place, and keep them in proper position.

The judgment of the District Court is affirmed.

*Judgment affirmed.*

Mr. CHIEF JUSTICE MUSSER and Mr. JUSTICE BAILEY concur.

Decided January 4, A. D. 1915. Rehearing denied February 1, A. D. 1915.