ZOTERELL *v.* REPP.

1. PHYSICIANS AND SURGEONS—MALPRACTICE—SKILL REQUIRED—
   EVIDENCE—NEW TRIAL.

   Plaintiff, a scrub woman, who needed medical attention, con-
   sulted defendant as her physician, who advised her as he
   claimed that she required an operation, which, when per-
   formed, disclosed a diseased condition of the ovaries.
   Defendant removed the one of the ovaries which was in the
   worse condition, having obtained her consent, as he
   claimed, anticipating the condition discovered, to this form
   of operation.  Afterwards a hernia developed at the point
   of incision and plaintiff was again admitted to the hospital
   and had a second operation by the defendant during which
   the remaining ovary was removed.  Plaintiff claimed that
   defendant was negligent in failing to correct and cure
   the hernia by the second operation and that he was guilty
   of malpractice in performing the ovarian operation without
   her consent.  It was plaintiff's contention that defendant
   only advised her that the first operation was of a minor
   nature and that she objected to the removal of the ovaries
   and did not know that they had been so removed until
   after the second operation.  Upon the trial the court sub-
   mitted the case to the jury upon the issue of the necessity
   of the operations performed and whether plaintiff had in
   fact consented to them.  No medical testimony was ad-
   duced by plaintiff to establish the claim that any act done
   by defendant was improperly done or that he omitted any
   treatment which would have cured her hernia.  There was
   also testimony by experts that hernias frequently resulted
   from operations.  *Held* that the court did not err in deny-
   ing plaintiff's motion for a new trial.[1]

2. SAME—NEGLIGENCE—MALPRACTICE.

   Where counsel in the course of his argument to the court
   disclaimed the right to recover for malpractice, in the
   absence of medical testimony tending to show the omission
   of any particular act or treatment, the court was not in

---

[1]As to liability of physician for performing surgical operation
without consent of patient, see notes in 1 L. R. A. (N. S.) 439;
7 L. R. A. (N. S.) 609, 50 L. R. A. (N. S.) 880.

error in declining to submit to the jury the question of negligence in causing the hernia or in failing to remedy it.

3. SAME—DUE CARE—EVIDENCE.

All that the law requires of a medical practitioner is that he bring and apply to the case such degree of skill and care as are possessed by practitioners of the medical profession in the place where the operation was performed. The bare fact that full recovery did not result or that the operation was not fully successful is not evidence of negligence.[1]

4. SAME.

Matters involving professional skill and alleged negligence or failure to do what ought to have been done arising in the course of a trial for malpractice must be shown by testimony of those who are learned in the profession.

5. SAME—DUE CARE.

And where physicians produced by defendant testified that the operations as defendant claimed they were performed were necessary and properly executed, that post-operative hernias were liable to develop after same and that the early removal of such condition was advisable, also, that the development of the hernia was not evidence of want of skill and plaintiff produced no evidence to contradict or dispute this, the court was not in error in limiting the issue to that of consent and the necessity or propriety of performing the operations.

Error to Wayne; Codd, J. Submitted April 15, 1915. (Docket No. 101.) Decided July 23, 1915.

Case by Rosa Zoterell against William A. Repp for malpractice in the performance of certain operations. Judgment for defendant. Plaintiff brings error. Affirmed.

*Charles C. Conklin* and *John Boughton* (*Henry F. Chipman,* of counsel), for appellant.

*Douglas, Eaman & Barbour* and *Clark, Lockwood, Bryant & Klein,* for appellee.

---

[1]As to degree of care and skill required of physician, see note in 37 L. R. A. 830.

STEERE, J. Plaintiff was defeated by the verdict of a jury in an action brought against defendant in a plea of trespass on the case to recover damages for negligence and professional misconduct while attending her as a physician and surgeon; it being charged that he performed upon her without her consent two major surgical operations which deprived her of the ability to bear children and resulted in an abdominal postoperative hernia. Defendant, a regular physician and surgeon, has been engaged in general practice since 1895, specializing in surgery and gynecology. At the time of the events complained of he was attending physician and surgeon for diseases of women at St. Mary's Hospital in Detroit. The operations performed by him upon plaintiff consisted of correcting a displaced uterus and removal of her ovaries. Plaintiff is an Austrian by birth who, when physically able, found employment at different places in unskilled domestic service such as washing dishes, house cleaning, scrubbing, etc. She was married in Austria in 1900, and had borne two children, one of whom was deceased and the other still living in the "old country." She had lived in Detroit 6 years and was 33 years of age at the time of this trial. In 1908 she was ill and treated by Dr. Schorr during about three months for "a condition that was constitutional, causing pain in her whole body." He testified that he found she had a retroverted womb, but did not then advise an operation, although conditions then existed which might point to the necessity of an operation, as to which, however, physicians might differ. While working as scrub woman at the Library Park Hotel in Detroit, in 1909, she was in poor health and consulted Dr. McElveen who lived at the hotel. He found her weak and run down, not strong enough to continue her work nor in a condition to earn her living by manual labor. After a physical examination he determined

187 Mich.—21.

that she needed hospital treatment, and, learning that she was without means, gave her temporary tonic treatment and a card to Dr. Hoffman of the poor commission, in order that she might, through that channel, be admitted to the hospital as a patient. Dr. Hoffman then inquired into the case, and, finding, as stated on Dr. McElveen's card, that she was not able to have the required operation where she lived, gave her a paper entitling her to admission as a patient in St. Mary's Hospital. She was received at the hospital about February 1, 1909. Her case being of the class which brought her under defendant's care and treatment, he took charge of her as a patient. She spoke the German language, as did also defendant, Dr. Stafford, his assistant, and Dr. Andrees, the then interne at the hospital. There was some difference in their testimony as to the length of time she was in the hospital before being operated upon. She testified she was admitted on Monday, was examined by and in daily consultation with defendant, receiving medicine and treatment, until Friday; when the first operation occurred. Defendant testified she was in the hospital under his care and observation for nine days before the operation, which occurred February 12, 1909. It disclosed to him, as he claims to have anticipated and advised her, not only the necessity of adjusting the uterus, which was misplaced and bound down by adhesions, but that both ovaries were diseased, the right being in a cysted condition and the left atrophied and shriveled. He then removed the right one, which was in the worse condition, and testifies that he would have removed the left had he felt at liberty to do so, but that in his diagnosis before operating the necessity of removing the right was more clearly indicated, and in his talks with her she had only distinctly consented to its removal, stating to him that she did not desire to be deprived of those organs if it could be avoided

because she was contemplating marriage and wished to be in a condition for motherhood, which he had informed her would be possible with one normal ovary. He also claims to have subsequently advised her of the nature of the operation she had undergone, of the removal of the right ovary and the condition of the left, which he did not then remove. On her discharge from the hospital she went to the home of her brother. Some six or eight months later she returned to defendant, complaining of trouble and pain in her left side, at that time also having a post-operative hernia, which had developed at the lower extremity of the incision made in the first operation. Being again admitted to the hospital another operation was performed by defendant, on January 23, 1910, in which the left ovary was removed and remedial treatment of the hernia administered. She recovered from this so as to be discharged from the hospital in about three weeks, but it was later found that the attempted repair of the hernia was not entirely successful, and she was yet afflicted with it at the time of the trial.

Plaintiff claimed and testified that on her consultations with defendant before the first operation he had advised and told her a minor operation only was necessary to relieve her condition; that he had spoken of removing the ovaries, to which she objected, and she did not know they had been removed until after the second operation when he told her that both had been taken out, one at each operation. She claimed and testified that this was done against her express objection and entirely without her knowledge or consent; that she submitted to the first on his representation that it would be a small or minor operation to relieve the condition of her womb; that she did not even know it would be necessary to "cut her open," or cut into the abdominal cavity; that the second operation was, as she under-

stood and consented to it after consultation with the doctor, chiefly to repair the rupture, to which she consented only for that purpose, relying on his assurances; that after ascertaining what he had done and finding that he had failed to cure the rupture, though he offered to operate again for that purpose, she was afraid he would make it worse, and declined to again go to the hospital. Defendant claimed and testified she was fully advised of her condition and the nature of both proposed operations before they were performed; that her case and condition were discussed and explained to her by him and his assistants, in the German language which she best understood; that she consented to both operations and to the removal of her ovaries as stated; nothing being done without her previous knowledge and consent. The testimony introduced at the trial was chiefly directed to the issue of her consent, and the necessity and propriety of the operations, and the court submitted to the jury in a full and careful charge the question whether or not the operations as performed, including removal of the ovaries, were consented to by plaintiff, positively instructing that if she did not understand and consent, she was entitled to recover, saying in part as follows:

"In this case, and in any case of an operation, the consent of the person operated upon is essential to justify the party operating in the performance of such operation, and regardless of how successful the operation may have been, how successfully performed, or how much such operation may have been needed, unless consent was given, it is an unlawful operation, and the party operating is liable for whatever damages may have resulted therefrom, according to the testimony in the case. And this consent must be with knowledge and understanding of the operation itself. If you find that the consent of the plaintiff at the time of the first operation was given for the treatment of the uterus only, and at the second operation for the repair of the hernia only, and that she did not consent to the opera-

tion for the removal of one of the ovaries at the first, and the other at the second, operation, and that the defendant did remove the ovaries at the time stated, then the consent to the operation for the cleaning of the uterus the first time and the consent to the operation to repair the hernia at the second time, cannot excuse the defendant for the performing an operation for the removal of the ovaries. In other words, consent must be given to the operation made. * * * If, on the contrary, you find that the consent was given understandingly by the plaintiff, to the operations in question, and that they were performed under that consent, it is your duty, if you find that from the testimony, to return a verdict in this case of not guilty."

Plaintiff submitted five requests covering the subject of consent, damages, etc. Omitting repetitions, the charge clearly covered the material parts of the first four; the fifth was as follows:

"If you find that the operation was performed as claimed by the plaintiff against her consent, you will, under the circumstances stated by her, allow her exemplary or added damages because of the wantonness, carelessness, and disregard of plaintiff's wishes and rights."

This request became immaterial in view of the verdict rendered by the jury that the operation was not against plaintiff's consent. The court also instructed the jury as follows:

"The question is not raised in this case by testimony that has been given from the stand, as to any lack of skill in the performance of the operation in question. That is not before you. There is no charge in the testimony that these operations were not skillfully performed. * * * In this connection, however, gentlemen of the jury, it is your duty to take into consideration, as bearing upon the question of whether or not consent was given. And I admitted for your consideration the testimony * * * of experts who were not there, to testify as to the probability and need of an operation of the character that was admittedly made. These matters you are to take into consid-

eration as bearing upon the probability or nonprobability of the plaintiff having consented to the operation in question. * * * They have a bearing upon the question, and it is your duty to consider them."

Plaintiff moved for a new trial, claiming the verdict was against the weight of evidence and assigning numerous other reasons, the chief ground of complaint around which the others appear to center being directed to the portion of the charge last quoted, and the conduct of the trial leading up to that proposition, which is perhaps best exemplified in the following excerpt from the motion:

"Because the question of whether the defendant was guilty of malpractice, or merely negligent, or lacked skill, in his failure to heal and cure plaintiff, as alleged in the declaration, should have been submitted to the jury, under the testimony; and the court in charging the jury gave them a wrong impression of what issues were involved; and put plaintiff on the defensive, by implication, that because she had not used proper diligence, she had not been healed, and therefore was not entitled to damages, when in truth she had gone to defendant twice for this purpose; that she had suffered for over one year under defendant's care, from a hernia he had produced but could not heal; these facts tending to show malpractice, lack of skill, or negligence on the part of defendant."

It does not appear that the verdict was against the great weight of evidence on the issues submitted to the jury under the rules recognized in determining motions for a new trial on that ground. That the nature of her trouble and the probable necessity of removing her ovaries was explained to and discussed with her is shown, we think, by her own testimony, for she stated she told him she did not want them taken out. The testimony of defendant and Dr. Andrees, who assisted in the operation, is positive and clear in detail that the matter was fully discussed with her and explained in language which she could understand;

that in discussing the matter she was told, with the rest and care which had been given her in the hospital, she was in a fair condition to go home if she wished, and if she grew worse she could return; that the following day she decided upon having the operation, and the matter was explained to her again, the condition of her right ovary being particularly discussed, after which she consented to its removal; that she fully understood the occasion of the second operation was to remove the left ovary which had been found diseased and functionless on the first operation and should have been, but was not, then removed, because she had not fully consented, and submitted to the second for that purpose, telling defendant to do what was necessary for her to get well. We see no occasion to disturb the verdict of the jury on the issue of consent.

We find it difficult to reconcile the position taken and claims made by plaintiff's counsel during the progress of the trial with the present contention that the court, in charging the jury, gave a wrong impression of what issues were involved and, as implied, ignored plaintiff's claim of "malpractice, lack of skill, or negligence on the part of defendant" because "he had produced, but could not heal," a hernia. Plaintiff's requests to charge were based on the claim that the two operations were unauthorized, and did not ask instructions upon or submission to the jury of the questions of malpractice or unskillful treatment. During the progress of the trial and in argument of the law to the court at the close of the testimony counsel for plaintiff made no claim of right to recover on the ground of malpractice or lack of skill, and objected to evidence offered by defendant which might tend to negative such claim. Dr. Carstens, a practitioner of medicine for many years, a specialist in diseases of women and chief of staff in that branch of practice

in Harper Hospital, was called as an expert by defendant, and during his examination was asked whether from his experience he considered a hernia such as was disclosed in this case evidence of malpractice or unskillfulness on the part of the surgeon, and plaintiff's counsel objected to the question as immaterial, irrelevant, and incompetent, to which the court said: "In what way is it immaterial? You charge that it was the result of unskillfulness"—and counsel replied:

" 'Malpractice' is the word he used in the question. In view of the fact that our declaration does not cover malpractice, there is no evidence in the case of that sort, and I think it is immaterial."

When counsel were discussing the legal phases of the case to the court at the close of the evidence, counsel for defendant said:

"During the progress of the trial of this case I have understood, by statements of counsel for the plaintiff, that they were claiming in this case for damages for the performance of an operation not authorized by the plaintiff, and that they were not claiming anything on the ground of malpractice or want of care in the performance of the operation."

And in answer to remarks of the court that he had understood there was no question as to skillfulness or lack of skillfulness in the operation, counsel for plaintiff said in part:

"I don't claim that there was; we have a declaration here that is clear, if it is understood—this declaration is clear if it is understood. I don't think Dr. Repp made any mistake in the manner in which he handled his knife that day. We have no proof that he did anything wrong there. So I cannot go to the jury on that. I claim that it was his duty to advise the plaintiff of the nature and effect of the operation. * * * If that is his duty, we are entitled to go to the jury on that point, provided we have the testimony, and we have the testimony on that point. He advised her to have

a minor operation and so forth. That is trespass upon the case, if we show those facts. He performed a major operation, more serious than the one he told her he would do. This is trespass on the case, not trespass. * * * He performed an operation without her knowledge and consent. Now, here is the only difference between Judge Lockwood and I in this case. I do not think that we have proven that he was unskillful in the handling of his knife; there is no testimony of that. * * * Our allegation is that the case of hernia was brought on by an unnecessary operation. He should keep her advised as to what he was going to do."

The question of plaintiff's understanding of and consent to the two operations having been submitted to the jury and decided in the affirmative, no other question could have arisen in the nature of the case under plaintiff's declaration but that of negligent malpractice, and if that could, in any aspect, be considered as before the court after counsel's statement of his position, it must necessarily relate to the post-operative hernia which had developed, of which ocular demonstration appears to have been made. In other words, counsel for plaintiff now contends and claims to have insisted during the trial, but to have been misunderstood by the court and opposing counsel, that, having the requisite skill, learning, and experience in his profession, defendant carelessly and negligently failed to apply and exercise the same in operating upon and caring for plaintiff, as a result of which a hernia followed the operation. This, of course, would be negligent malpractice, and counsel distinctly stated to the court on the trial, "our declaration does not cover malpractice." Assuming that in so stating counsel only intended to disclaim as to ignorant malpractice, or lack of knowledge and skill, and that the questions of carelessness and neglect were before the court even though there was consent to the operations, we fail to discover competent evidence in the record to raise that issue for the jury. The complaint is of the result of

the operation, with no expert testimony pointing to anything done which ought not to have been done, or to any particular thing neglected which ought to have been done which honest and intelligent skill, treatment, and vigilance in that profession ordinarily demands in such a case.

The difficulties and uncertainties in the practice of medicine and surgery are such that no practitioner can be required to guarantee results, and all the law demands is that he bring and apply to the case in hand that degree of skill, care, knowledge, and attention ordinarily possessed and exercised by practitioners of the medical profession under like circumstances (*Pelky* v. *Palmer*, 109 Mich. 561 [67 N. W. 561]; *Miller* v. *Toles*, 183 Mich. 252 [150 N. W. 118]); and the bare fact that full recovery does not result, or that a surgical operation is not entirely successful, is not in itself evidence of negligence.

As to those matters of special knowledge strictly involving professional skill and attention, unskillfulness, negligence, or failure to do that which ought to be done must be shown by the testimony of those learned in such matters. In *Wood* v. *Barker*, 49 Mich. 295 (13 N. W. 597), the rule as to competent evidence in this class of cases is stated as follows:

"Where all the testimony in the case is in favor of the treatment pursued, and the question is one of medical skill which can only be tested by those familiar with such matters, it was error to let the jury draw adverse conclusions, which could only be based on their unprofessional notions of how such injuries should be treated."

The same principle is clearly reiterated in the late case of *Miller* v. *Toles, supra.*

None of the physicians and surgeons called as a witness, whether testifying from personal knowledge and observation or as an expert in answer to hypothetical questions based upon assumed facts of which there is

distinct evidence in the record, questioned the necessity and propriety of the operations performed and the care and treatment given plaintiff by defendant, nor expressed any opinion that the post-operative hernia was attributable to want of skill or negligence. It was shown by Drs. Brady and Carstens, surgeons and specialists in gynecology of long experience, that the operations as described were necessary and properly performed; that post-operative hernias following such abdominal operations are liable to develop, and no physician can tell why or when it may happen in any particular case. Dr. Carstens, in answer to a hypothetical question based upon the testimony as to her condition, said:

"If in the condition you describe, I should consider it necessary to remove it. Those cases are incurable; they continue to develop cysts; the cysts get larger. The average woman's life with a cystic ovary is only two years and a half. The larger they get the more dangerous they are. For that reason we encourage an early removal, if we find that sort of a condition."

Asked if from his experience he considered a hernia in this case any evidence of malpractice or unskillfulness on the part of the surgeon, he answered:

"I do not. * * * That can happen in any sort of a case, any kind of an abdominal operation, by any surgeon. * * * I don't know anybody that has not had it happen some time or other. * * * It may happen all the time; we think about it and guard against it, but in spite of anything it happens occasionally.

"*Q.* Do you think this hernia could be repaired on her now?

"*A.* I think so, certainly. It could when I saw her last. I don't know about it now."

We find no testimony in the record contradicting this. Dr. Schorr, called by plaintiff, who treated her in 1908 and then found conditions which might by some be regarded as pointing to the necessity of an opera-

tion, testified that it was not possible to tell positively whether an ovary was diseased or encysted until an operation is performed, and in answer to a question based upon conditions found at the time of the operations in 1909 and 1910, said:

"If an ovary is diseased it destroys its functions of reproduction. If an ovary is diseased it would not be of any value as a reproductive organ. An ovary in that condition would be better removed as far as the health and life of the patient is concerned. If a condition did exist as you have stated, I think the operation was necessary for the life of the woman. Sometimes when a woman is in a worn-down condition a wound will not heal as quickly as otherwise. I examined the hernia. I do not consider it a bad hernia for the reason that it could be repaired.   *   *   *   Simply cut through the skin and go down to where the muscles are that separate it and bring them together and pare the edges so that they will grow together and there would be a union. The principal membrane could be left intact, and you would not have to go into the abdomen at all. That is a common operation. Hernias are quite frequent."

We are of opinion that the trial court committed no error in instructing the jury that if plaintiff understandingly consented to the operations in question, and they were performed under and according to such consent, there was no evidence in the case to sustain a recovery.

The judgment is affirmed.

BROOKE, C. J., and KUHN, STONE, OSTRANDER, BIRD, and MOORE, JJ., concurred.

The late Justice MCALVAY took no part in this decision.