DEAN, Respondent, v. SEEMAN, Appellant.

(176 N. W. 649.)

(File No. 4542.    Opinion filed February 19, 1920.)

1.  **Appeals—Appeal From Judgment After Year, Too Late—Appeal From Order Re New Trial Submitted Within Year, Effect—Statutes.**

    Where more than a year elapsed after entry of judgment and before appeal taken, the appeal was too late and will be disregarded; Sec. 3147 Code 1919; but, motion for new trial having been submitted before right to appeal from judgment has expired, appeal from order denying new trial, taken within sixty days from order entry, was timely; Sec. 2555 Code 1919.

2.  **Physicians and Surgeons—Malpractice, Overlapped Bones, Whether Negligence or Unskillfulness—Responsibility, Service, Not Results.**

    The mere fact that an obliquely fractured bone did not stay in place or grow together in usual time does not prove or imply negligence or unskilfulness; physicians and surgeons are not holden for results, but only for kind of service rendered.

3.  **Same—Broken Limb—Surgeon's Implied Contract, Not Restoration But Diligence, Skill.**

    In treating a broken or diseased limb, implied contract between surgeon and patient is not to restore to natural condition, but to use the degree of diligence and skill ordinarily possessed by average members of profession in similar localities, giving due consideration to state of the art at the time.

4.  **Same—Malpractice, Thigh Fracture, Using Splints, Bandages, No "Extensions," Plaster Cast Later, Knowledge of Overlapping Bones, Effect.**

    Where defendant surgeon placed obliquely broken thigh bones in splints and bandages, knowing the thigh muscles would tend to contract and draw bones past each other and shorten the limb, yet applied no "extensions" or other means to overcome this tendency, and later, when splints were removed and limb put in plater cast, and evidence warranting jury finding that the fragments were out of place so that a union was improbable, and that defendant knew this, he admitting discovery of shortening of the limb and that he knew it indicated such slipping of fragments, yet the cast was not removed for nearly a month, defendant testifying he knew much stronger application neces-

37—Vol. 42, S. D.

sary where broken bone was surrounded by heavy muscles, yet that he did not put extensions or weights upon the foot; held, a verdict for plaintiff for damages for malpractice was justified.

5.  Malpractice—Treating Broken Thigh, Surgton's Negligence, Non-exercise of Ordinary and Average Skill and Care, Intruction Re.

In a suit for damages for negligence by defendant surgeon in treating plaintiff's broken thigh bone, trial court properly instructed that to wararnt verdict for plaintiff jury must find defendant did not render the service for which he was empolyed, nor exercised due and ordinary skill and care, such as required of physicians, and that if they find the injury was occasioned by lack of skill and care, and that unless it is proven defendant failed to exercise such reasonable, ordinary and average learning, care and skill in the treatment, verdict must be for defendant.

6.  Trials—Refused Instruction, Point Embraced in Instructions Given, Effect.

Where instructions given covered substantially all that is contained in requested instructions, such refusal is not prejudicial error.

7.  Evidence—Pleadings—Malpractice, Fractured Thigh, Surgeon's Non-use of Weights, Evidence of Under Allegation of Negligence, Admissibility.

In a suit for damages for malpractice in treatment of plaintiff's broken thigh bone, it was proper to admit in evidence plaintiff's wife's testimony as to whether there were any weights or extensions applied to the limb by defendant, as against the objection that failure to use weights was not plead, it being admissible under general allegation of negligence; and especially was admission of the evidence non-prejudicial, defendant having testified he did not use weights or extensions other than a plaster cast.

8.  Same—Malpractice, Reduction of Fracture—Hypothetical Question Re Ordinary Methods, Whether Assuming But One Method Used, Effect—Defendant's Right to Rebut.

In a suit for damages for injury through malpractice, it was proper to permit plaintiff's medical-expert witness to answer a hypothetical question as to the usual ordinary method of the medical profession in reduction of a fracture such as was sustained by plaintiff, basing the answer upon methods ordinarily and usually employed in the vicinity and at about the time in question; this as against objection that it assumes there is but one usual and ordinary method; plaintiff might assume and prove there was but one such usual or proper method, while defendant might rebut by showing some other way usual, or that there was more than one proper way.

9.  **Same—Hypothetical Questions, Discretion of Court Re—Court's Duty Re Framing, Responsiveness to Issue, and Non-assumption of Facts Dehors Record—Latitude Re Questions—Rebuttal.**

The propriety of allowing hypothetical questions rests largely in court's discretion, and where allowable, trial court's duty is to see they are properly framed, are responsive to issues and assume only facts supported by some evidence; but party framing same has fairly wide latitude, within reasonable bounds as to his theory of case and evidence supporting it; opposite party having right to rebut the facts thus assumed as well as testimony of witness.

10. **Same—Hypothetical Questions, Proof By Whether Proven, Question for Jury.**

Whether facts testified to in response to hypothetical questions have been actually proven, is a question for jury.

11. **Evidence—Malpractice, Fractured Thigh Bone, Exhibition to Jury, Erroneous, Non-prejudicial.**

Where, in a suit for damages for malpractice, court, over defendant's objection, permitted plaintiff to exhibit the injured thigh whose bone had been fractured, to jury, this was erroneous, there being no dispute as to nature, location or extension of injury or of recovery; yet deefndant was not prejudiced thereby, the exhibition being without apparent result.

Appeal from Circuit Court, Faulk County. Hon. JOSEPH H. BOTTUM, Judge.

Action by James O. Dean against Henry J. Seeman, to recover damages for alleged malpractice. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

*Roy T. Bull,* and *Morris & Moriarty,* for Appellant.

*Sterling & Clark,* and *W. J. Jacobs,* for Respondent.

(3) To point three, Appellant cited: Miller v. Toles, 150 N. W. 118; Sawyer v. Berthold, 134 N. W. 120.

POLLEY, J. [1] This is an attempted appeal from a judgment and an order overruling motion for a new trial; but more than a year had elapsed after the entry of the judgment and before the appeal was taken. Therefore, so far as the judgment is concerned, the appeal was too late, under the present statute, and will be disregarded. Section 3147, Code 1919. But the motion for the new trial had been submitted to the court before the right to appeal from the judgment had expired. Therefore the trial court did not lose jurisdiction of the case

upon the expiration of the time for appealing from the judgment, and, the appeal having been taken within 60 days after notice of the entry of the order denying a new trial, as to such order the appeal was in time. This permits us to review such matters as are properly assigned and as are made a ground for, new trial, under the provisions of section 2555, Code 1919; Keyes v. Baskerville, 175 N. W. 874.

The action was brought .to recover damages for alleged malpractice. Defendant is a physician and surgeon, practicing his profession at Rockham. In an accident that occurred on the 4th day of December, 1914, plaintiff broke the femur bone in one of his legs, and employed the defendant to set the fractured bone and to otherwise treat the injury. Defendant continued to attend plaintiff's injury until the 5th day of the following February, when another surgeon was called. An examination of the injury showed that the ends of the broken bone were not in proper place, but lapped by each other in such a way that it could not possibly heal. Plaintiff was at once removed to a hospital in Redfield, where his injury was given further treatment, and a recovery soon followed. Verdict and judgment were for plaintiff, and defendant appeals.

It is not claimed that defendant did not properly set the bone in the first instance, but it is claimed that he did not take the proper steps to keep the fragments of the bone in place until they could unite, and that he did not give the matter sufficient attention for a considerable length of time before he discovered their condition, to learn that the ends of the bone had been slipping by each other and had been out of place, and that, because of this fact, it became necessary to make an incision in plaintiff's leg, to reset the bone, and to use what is known as a Lane plate to hold the bone in place while the fracture healed and grew together; that this greatly increased plaintiff's pain and suffering, increased his expense for medical attendance and hospital services, and also caused an additional loss of time. On the other hand, it is contended by appellant that none of these results were caused by any negligence or lack of care on his part.

[2, 3]   It may be stated in the beginning that the mere fact that the broken bone did not stay in place after it had

been set and did not grow together in the usual length of time does not necessarily prove, nor even imply, that appellant was negligent or unskillful. Physicians and surgeons are not to be held responsible for results, but only for the kind of service rendered by them. Sawyer v. Berthold, 116 Minn. 441, 134 N. W. 120; McGraw v. Kerr, 23 Colo. App. 163, 128 Pac. 870; Craghead v. McCullough, 58 Colo. 485, 146 Pac. 235, Ann. Cas. 1916C, 1075; Zoterell v. Repp, 187 Mich. 319, 153 N. W. 692; Farrell v. Haze, 157 Mich. 374, 122 N. W. 197; Snearly v. McCarthy, 180 Iowa 81, 161 N. W. 108; Norkett v. Martin (Colo.), 165 Pac. 256. And in 30 Cyc. 1573, note 35, the rule is stated as follows:

"In treating a broken or diseased limb, the implied contract between the surgeon and patient is not to restore it to its natural condition, but to use that degree of diligence and skill which is ordinarily possessed by the average of the members of the profession in similar localities, giving due consideration to the state of the art at the time." Miller v. Toles, 183 Mich. 252, 150 N. W. 118, L. R. A. 1915C, 595.

[4] It appears from the undisputed evidence that the fragments of the broken bone were placed in proper apposition by appellant immediately after the injury. The limb was then placed in splints and bandages. The fracture was not squarely, but obliquely, across the bone, and appellant himself testified that he knew the muscles of the thigh would have a tendency to contract and draw the oblique surfaces of the bone past each other, and in that way materially shorten the limb and prevent a union of the fractured bone, yet he applied no "extensions" or other means to overcome this tendency of the muscles to contract other than the use of the splints and bandages, as above mentioned. The limb was left in this condition until about the 28th day of December, when appellant removed the splints and put it in a plaster cast. He was assisted in this operation by a professional nurse. She testified that, when the splints were removed, it was apparent that the bones had slipped out of place, and that she directed appellant's attention to this fact. Appellant denies that he knew, or was told, that the bones were out of place at that time, but the jury had a right to believe the nurse, and would have been justified in finding—and probably

did find—that the fragments of the bone were out place and in such a position, when the cast was put on, that a union was improbable. Another significant fact—and one from which appellant ought to have known that the fragments of the bone were not in place—was that the patient's foot did not remain in an upright position, but would gradually lop over, sometimes outwardly and sometimes in towards the other foot, and frequently had to be straightened up. Appellant admits that, shortly after the cast was applied, he discovered a shortening of the patient's limb, and admitted that he knew that this shortening of the limb indicated that the fragments of the bone were slipping by each other, yet the cast was not removed, nor any steps taken to prevent this slipping, until some time between the 20th and 25th days of January. Upon the question of taking steps to prevent the slipping of the fragments of bone, the appellant testified:

"The larger the number and the heavier the muscels are about a broken bone, the more care is required to see that they do not contract and displace the broken bones. I knew that it was a matter of ordinary care and skill for the physician to guard against contracting of the muscle in the setting of a broken limb. After the bones are in place, the next thing is to have them stay there. I knew that much stronger application would be required and external means would be necessary in the case of a broken bone surrounded by heavy muscles than would be in the case where the muscles were less in number and lighter, as a usual thing. Notwithstanding that knowledge on my part, I did not put any extension or weights upon his foot."

[5] Upon the question of negligence, the trial court instructed the jury that—

"In order to render a verdict in favor of the plaintiff, you must find that the defendant did not render the services for which he was employed, and did not exercise due and ordinary skill and care, such as is required of physicians. And you must also find, if you find that there was an injury, that the injury was occasioned by the lack of skill and care (the skill and care rendered by the defendant); there must be a direct connection between the two. * * * And the court instructs you

that, unless it is proven by a preponderance of the evidence that the defendant failed to exercise such reasonable, ordinary, and average learning, care, and skill, in the treatment of plaintiff's injury, then your verdict must be for the defendant."

These instructions correctly state the law as applicable to the above facts, and the verdict was warranted by the evidence.

[6] The trial court refused to give certain instructions requested by appellant, and such refusal is assigned as error. Whether such requested instructions correctly state the law it is not necessary to determine. Substantially all that is contained in the requested instructions is contained in the instructions given by the court, so that appellant was not prejudiced by the refusal of the court. The instructions given by the court fully covered the issue in the case, and, on the whole, were favorable to the appellant.

[7] During the trial, the court permitted the plaintiff's wife, while on the witness stand, to answer the following question:

"You may state whether or not there were any weights or extensions applied to this injured limb by Dr. Seeman, during all of the time that he attended to your husband."

This was objected to on the ground that it was not competent under the pleadings. It was not necessary to plead the failure to use weights in order to admit this testimony. The question was competent, under the general allegation of negligence, to show the manner in which appellant treated plaintiff's injured limb; but in any event appellant was not prejudiced, for he testified, on direct examination and in his own behalf, in describing the manner in which he treated the injured limb, that he did not use any weights or any extensions other than the plaster cast

[8] The following hypothetical question was put to a medical-expert witness on behalf of plaintiff:

"What is the usual and ordinary method pursued by members of your profession in the reducing of a fracture such as was sustained by Mr. Dean, basing your answer upon the methods employed ordinarily and usually by the members of your profession in the general vicinity of Rockham, and during

and about the latter part of the year 1914 and the early part of the year 1915?"

This was objected to on the ground that it assumed a fact not in evidence, in that it assumes that there is only one usual and ordinary method. The objection was overruled, and we think properly so. The plaintiff had a right to assume and to prove, if he could, that there was but one usual or proper way of treating an injury like plaintiff's. But this is not conclusive nor binding upon appellant. He had the right to rebut this testimony, and to prove, if he could, that some other way was the usual way, or that there was more than one proper way.

[9, 10] A number of hypothetical questions asked by plaintiff were objected to by appellant on the ground that such questions assumed certain facts not proven by the evidence. The propriety of allowing hypothetical questions rests largely in the discretion of the trial court, and, where such questions are allowable, it is the duty of the trial court to see that they are properly framed, that they are responsive to the issues in question, and that they assume only such facts as are supported by some evidence in the record. Whether such facts have been actually proven is a question for the jury to decide. But the party framing such questions should be allowed a fairly wide latitude, so long as he keeps within reasonable bounds as to his theory of the case and the evidence supporting such theory. The opposing party has the right to rebut the facts assumed, as well as the testimony of the witness. We believe plaintiff kept within this rule, and that there was no error in overruling appellant's objections.

[11] During the trial, the court, over appellant's objection, permitted the plaintiff to exhibit the injured limb to the jury. What the purpose of this exhibition was is not apparent. There was no dispute as to the nature, location, or extent of the injury, nor as to the extent of the recovery. We are unable to see how the jury had any more knowledge relative to the issues involved after the inspection than they had before, and the court should not have permitted it. But, on the other hand, we are unable to see how the appellant was prejudiced or how the inspection could have influenced the minds of the jury one way or another.

It was merely a useless and harmless proceeding, without apparent result.

The other assignments have been carefully examined, but, no prejudicial error appearing, the order appealed from is affirmed.