MARSHALL W. WOOD v. CHARLES A. BARKER.

*Physicians— Value of services—Malpractice.*

There is no presumption of law as to the value of a surgeon's services, nor that a jury can ascertain their value without testimony from persons knowing something about it. Nor has a jury a right to reduce the compensation claimed for such services where undisputed testimony shows it to have been appropriate, and on their own

unsupported notions that the treatment adopted should have been different.

A jury has no right to ignore testimony that has not been discredited, and form independent conclusions, without testimony, on matters that require proof beyond their conjectures or opinions.

The fact that a surgeon changes a course of treatment adopted by another does not in itself show that the former course of treatment was not proper at the time ; nor is the patient's failure to recover perfect soundness of limb in itself evidence of malpractice, nor is the fact that he survived, although he refused to allow a particular course of treatment, evidence that such course might not have been proper under the circumstances.

The jury in an action for the value of surgical services has no right to find malpractice without testimony from persons who are qualified to give opinions on the methods of treatment.

Error to Chippewa. Submitted October 6. Decided October 18.

Assumpsit. Plaintiff brings error. Reversed.

*Charles S. Cushman* and *Watts S. Humphrey* for appellant. Negligence in matters involving special knowledge can only be shown by experts : *Ogden v. Parsons* 23 How. 167 ; *Beaubien v. Cicotte* 12 Mich. 490 ; *Enright v. Hartsig* 46 Mich. 471 ; Whart. Ev. §§ 437, 440, 441.

*A. & C. A. Blair* for appellee.

Campbell, J. Plaintiff, who is a surgeon, sued defendant on his promise to pay for professional services rendered to one Murray, who had been injured by a blast, so that both legs were badly crushed below the knee. Plaintiff was called in as counsel to aid the attending surgeon Dr. Harding, shortly after the accident at Sault St. Marie. The left leg was amputated, and they were both of opinion that amputation of the other was expedient, by reason of the extensive comminuted fracture of the bones and laceration involving injury to an artery, to prevent extreme danger of death. The opposition of Murray to this prevented the amputation and the limb was ultimately saved but not entirely restored to its original condition.

Some time after the plaintiff had ceased his visits and while the case was in the hands of Dr. Harding, aided by a nurse, Dr. Jessop of Mackinaw came over and was employed to treat the patient in connection with Dr. Harding.

The only medical testimony in the case was given by plaintiff and Dr. Harding. Dr. Jessop was not sworn.

The employment by defendant seems to have been shown, and the questions on which the controversy appears to have turned were the value of the services and the propriety of the treatment.

It is to be observed that there is no conflict of testimony whatever in regard to the fact of the work and attendance of plaintiff, and no testimony which did not leave a considerable sum due him if those services were properly rendered.

The court in charging the jury told them in substance that they were at liberty, if not satisfied with the testimony of the experts, to use their own judgment on the question of value. They were also instructed that if plaintiff's course was unskillful, they might reduce the fees accordingly, as in their judgment should be deemed proper. They gave plaintiff nothing.

There can be no presumption of law concerning the value of a surgeon's services, and there is no presumption that a jury can ascertain it without testimony of some kind, from persons knowing something about such value. As already suggested there was positive testimony of value not discredited, and, in the case of Dr. Harding, given by a disinterested witness called for important purposes by the defendant himself. We can see no sufficient reason for the suggestion that all of this testimony might be disregarded, and there is no rule which would allow the jury to entirely ignore the testimony, and at the same time to form an independent conclusion without testimony upon a matter which required proof beyond their conjectures or their opinions. We do not say that the value of a physican's services at a given time and place may not be known to other persons than physicians, if they have been in a position to learn the customary or proper rates. But there is no legal presump-

tion and no reasonable probability that all jurymen have this knowledge. And there can be no safety to any one if juries are to use their own unguided views on such matters.

Neither was there any evidence which would justify the jury in reducing the otherwise appropriate compensation on the ground that plaintiff's treatment was improper. There was no such evidence.

The fact that the injured limbs were slow in healing and imperfectly healed at last does not necessarily show that the treatment was improper. The injuries as described were of a very aggravated nature, and beyond any ordinary fracture, the limbs being bruised and badly lacerated, the bones crushed and an artery torn. Both medical witnesses were of opinion that there was danger in leaving the right leg on. There is nothing to show that the course taken under plaintiff's oversight was not the proper one, and nothing to show that when he left the case in the hands of the regular surgeon and nurse, anything necessary had been omitted or anything done out of the way. On the contrary, not only the plaintiff but Dr. Harding gave positive testimony the other way. There is nothing to show that plaintiff did not possess and use competent skill. The fact that some time later Dr. Jessop made some change in the management of the remaining limb has no tendency to show that the previous treatment was not proper at the time, and no one testifies it was not. Dr. Harding's testimony indicates entire harmony of views, and Dr. Jessop is not produced to contradict him. No other medical testimony is offered to show any failure of skill or any mistake in the treatment.

Where all the testimony in the case is in favor of the treatment pursued, and the question is one of medical skill which can only be tested by those familiar with such matters, it was error to let the jury draw adverse conclusions, which could only be based on their unprofessional notions of how such injuries should be treated. The fact that Murray survived is not evidence that his case was not desperate in appearance or in fact, and the fact that his limb is not restored to perfect soundness is no proof that he has

been maltreated. The jury could not rightly be allowed to find malpractice without testimony from persons who were qualified to give opinions on the method of treatment.

The judgment must be reversed with costs and a new trial granted.

The other Justices concurred.