109   561
110   558

109   561
149   235

109   561
f157   2392

37 LRA 839

PELKY v. PALMER.

1. MALPRACTICE—INSTRUCTIONS—MEASURE OF DUTY.
An instruction, in an action against a surgeon for malprac-
tice, that the measure of defendant's legal duty was to exer-
cise such care, skill, and diligence in his treatment of the
plaintiff as physicians and surgeons "in the neighborhood
where he resided" ordinarily exercised in like cases, while
not strictly accurate, is not prejudicial to the plaintiff, where
it appears that the defendant resided in a city where there
were other physicians, presumably of average ability when
compared with similar localities.

2. SAME—QUANTUM OF PROOF.
It is error to instruct the jury in a malpractice case that
the plaintiff cannot recover unless he shows, by a preponder-
ance of the evidence, "a state of facts from which no other
*rational conclusion* can be drawn than that the defendant
was unskillful and negligent;" the effect being to require the
jury to acquit, if they can, upon any theory, find the facts
rationally consistent with skill and diligence, notwithstand-
ing a contrary probability.

Error to Jackson; Peck, J.   Submitted May 1, 1896.
Decided June 2, 1896.

Case by John A. Pelky against Frank E. Palmer,
a surgeon, for malpractice.   From a judgment for de-
fendant, plaintiff brings error.   Reversed.

*Richard Price* (*Rienzi Loud*, of counsel), for ap-
pellant.

*A. M. Culver* and *John Atkinson*, for appellee.

HOOKER, J.   The plaintiff was defeated in an action
for malpractice, brought against a surgeon whom he em-
ployed to set his broken arm.   He was unable to give

the defendant information as to the cause of the injury, which he discovered while on his way home from Parma, a neighboring village. The defendant set his arm on Tuesday morning. On Thursday the plaintiff called at defendant's office in Albion, and found him absent, a card upon his door stating that he had gone to the State of Ohio. The plaintiff called again upon Saturday, and complained to the defendant that his hand and arm hurt him. Defendant stated that he could not attend to him then, as he had an urgent call to attend a person who had just had a stroke of paralysis, but he finally looked at his hand, which plaintiff says was black underneath, and cut away some of the wood of the splint, and told him to come the next day, which he did. At that time, according to the plaintiff's version, the defendant pointed out lines of gangrene from the elbow to the wrist. He tied it up, and plaintiff called again Wednesday, according to defendant's instructions. Subsequently defendant called upon the plaintiff, and treated him for 15 days. The arm shrunk, and has troubled him since in ways described. Defendant's testimony is quite at variance with that of the plaintiff, but need not be stated.

The first question of importance arises over a request to charge that—

" The defendant was bound to exercise such skill, care, and attention, in setting the arm of plaintiff and its treatment thereafter, as should be ordinarily exercised by a man of his profession under like circumstances."

The court modified this, and instructed the jury as follows:

" Now, Dr. Palmer was bound to exercise reasonable and ordinary care, skill, and diligence in his treatment of plaintiff's arm and injuries. That was the measure of his legal duty,—such care, skill, and diligence as physicians and surgeons in the neighborhood where he resided, and where he practiced his profession, and who are engaged in the same general line of practice, ordinarily have

and exercise in like cases. And the defendant can be held to no higher or greater care, skill, and diligence than this.  *  *  *  Now, I instruct you, with reference to this point, that ordinary skill implies ordinary judgment in the selection and adoption of methods and details of a surgeon's practice, and the defendant, Dr. Palmer, should not be held guilty of malpractice in this case, if, in these respects, he exercised the ordinary judgment of physicians in his neighborhood, even though it may be found that some other course would have been better, or would have prevented the unfortunate results here complained of. He could not be liable in this case for errors of judgment, unless you find, from the evidence, that he failed to exercise the ordinary judgment of physicians in his neighborhood, in deciding upon and pursuing a course where different physicians of ordinary skill and judgment might disagree as to the practice to be pursued or the precise course to be adopted."

We may reasonably take judicial notice that a surgeon's skill depends somewhat upon his experience and opportunity for witnessing operations, and it is to be expected that the degrees of surgical skill met with in different localities will be affected by these things. While a man with no skill, or inconsiderable skill, could not shelter himself behind the claim that he was the only practitioner in his neighborhood, and therefore that he was possessed of the ordinary skill required, although shown to possess less than the ordinary skill to be met with in such localities, or, as the books sometimes say, in the general neighborhood, it is true that the character of the locality has an important bearing upon the degree requisite. And, while the language of the circuit judge, taken abstractly, was perhaps not strictly accurate, yet, in view of the testimony showing that the defendant resided in one of the cities of the State, where, as the evidence shows, there are other physicians, presumably of average ability when compared with similar localities, we see no indication that the plaintiff was injured, especially as there was nothing to indicate a claim that such physicians were below the general standard in such localities.

Error is alleged upon the instruction that an error in judgment cannot be treated as legal negligence, provided the defendant exercised the ordinary judgment of an ordinary physician in his locality. The subject was discussed somewhat at length, and the charge stated the rule correctly, except as it was limited to the particular locality, which, as already said, if inaccurate, was probably due to the fact that, under the proofs, a closer discrimination was unnecessary.

The charge excluded, as grounds of recovery, the failure of defendant to give antiseptic treatment when he set the arm, the alleged insufficient size of the hole in the splint, whereby a proper examination of the bruised tissues could be made, and whether he was negligent in not seeing the plaintiff on Friday, or in postponing examination until Sunday, when he called upon defendant on Saturday, and told him that he was and had been experiencing severe pain. The only evidence offered by the plaintiff tending to prove improper practice was that of one Dr. De May, who, in answer to a long hypothetical question closing with the inquiry, "What, in your opinion, caused the gangrene, and the sloughing out, and wasting away of the forearm and hand?" answered, "Too tight bandaging, and lack of proper attention on the part of the physician." On cross-examination, he said, substantially, that the question asked excluded all other causes, and that his conclusion that there was tight bandaging was drawn from the alleged "fact that the man suffered great pain, that he had swelling, blackness of the hand, discoloration." On his redirect examination he stated that there was lack of attention in not seeing the patient daily, in his failure to leave the case in another physician's hands when he went away, and in his neglect to undo and look at the arm on Saturday, and ascertain the condition of the wound. He also thought provision should have been made so that the region of the wound could be seen. The inference, from his testimony, is that too tight bandaging stopped the circulation of the blood, and caused gangrene, and that this

was not seasonably discovered, because of the improper use of splints and appliances, and failure to examine. We have discovered nothing in this testimony about antiseptic treatment, and it is not clear, from the briefs, that there was any testimony tending to show that the condition of the arm was due to a failure to give antiseptic treatment. But we are impressed that the testimony of Dr. De May tended in the direction claimed, and justified the submission to the jury of the question of neglect in the particulars mentioned.

One further question demands notice. The court said to the jury:

"You are instructed that the plaintiff cannot recover in this action unless he shows, by a preponderance of the evidence, a state of facts from which no other rational conclusion can be drawn than that defendant was unskillful and negligent, which were the proximate causes of producing the result complained of; and it is not enough to show a state of things equally consistent with unskillfulness and negligence or the absence of them."

The latter part of this instruction is not objectionable; for, where the inferences to be drawn from the facts proved are as consistent with skill and diligence as with unskillfulness, the plaintiff should fail. But a rational conclusion is a conclusion which is reasonable, or "agreeable to reason," and, of two conclusions inferable from known facts, one may be more rational than the other, or men may differ as to which is the more rational. It cannot properly be said that the plaintiff cannot recover where it is possible to draw a rational conclusion other than that of negligence. That is, in effect, applying a rule approximating that of reasonable doubt. We think that the true rule is that, where there are two inferences equally consistent with the facts proved, one of them cannot reasonably be drawn to the prejudice or exclusion of the other, and the plaintiff would necessarily fail; but where, although either of two inferences might legitimately and reasonably be drawn, one involving negli-

gence is more reasonable or likely than the other, then the case cannot be taken from the jury. 1 Beven, Neg. 133. The author continues:

"It is not sufficient, to exonerate a defendant, merely to point out that the facts proved are susceptible of another conclusion than that of negligence. It must be shown that, of the two inferences that can be drawn, there must be a probability of the inference that acquits him either equal to or greater than that which points to negligence."

In other words, the language used excluded probability, by requiring the jury to acquit, if they could, upon any theory, find the facts rationally consistent with skill and diligence, notwithstanding a contrary probability. It is possible that the instruction was understood, as it was doubtless intended, to point out the necessity of a probability of unskillfulness, as a rational conclusion, before the jury could find a verdict for the plaintiff, but we think it went further.

We are therefore constrained to reverse the judgment, and it is ordered accordingly. A new trial is directed.

GRANT, MONTGOMERY, and MOORE, JJ., concurred. LONG, C. J., did not sit.