*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROSA JOHNSON,

        Plaintiff-Appellant,

v

AQUATIC SOLUTIONS PHYSICAL THERAPY, LLC,

        Defendant-Appellee.

UNPUBLISHED
May 07, 2026
1:31 PM

No. 374732
Macomb Circuit Court
LC No. 2023-002228-NO

Before: RIORDAN, P.J., and MURRAY and MALDONADO, JJ.

PER CURIAM.

In this slip-and-fall case, plaintiff Rosa Johnson appeals as of right the trial court's order granting summary disposition in favor of defendant Aquatic Solutions Physical Therapy, LLC, pursuant to MCR 2.116(C)(7) and (10). On appeal, plaintiff argues that the waiver she signed allowing her to use the shower facilities offered by defendant is void as against public policy and, alternatively, that defendant should nonetheless be liable for gross negligence. Defendant responds that the trial court correctly ruled that it is protected from liability due to the waiver signed by plaintiff, and plaintiff failed to establish the elements of her premises-liability claim in any event. For the reasons set forth, we affirm the trial court.

## I. FACTS

In July 2023, plaintiff filed her complaint against defendant, alleging that "[o]n or about August 5, 2022, Plaintiff was preparing to receive physical therapy services at the Defendant's facility when she slipped and fell on water, causing her to sustain injuries." According to plaintiff, "Defendant knew or should have known of the wet flooring and that this condition was not reasonably safe," so defendant was liable in premises liability for her injuries.

In October 2024, defendant moved for summary disposition pursuant to MCR 2.116(C)(7) and (C)(10). In the motion and accompanying brief, defendant explained that on August 5, 2022, plaintiff showered in its "Shower Facilities," i.e., shower room, before physical therapy that day, and she slipped and fell after exiting the shower itself. Plaintiff testified in her deposition that she closed the shower door, walked toward the bench in her "shower shoes," but slipped and fell after

-1-

about two steps. Plaintiff acknowledged that she did not see a puddle of water on the floor beforehand to cause her slip and fall, but she inferred that the puddle existed because she "felt it" when slipping. Plaintiff added that she observed a puddle of water around her body when she was on the ground, although she acknowledged losing consciousness beforehand, thus implying the possibility that the puddle of water came from her body when she was on the ground unconscious.

In addition to this factual background, defendant explained that on July 20, 2022, the date on which plaintiff began treating with defendant, she signed a one-page "Shower Facility Usage Liability Waiver," which provided:

> 1. I understand that in utilizing the Shower Facilities, there is a possibility of accidental or other physical injury. I agree to assume the risk of such injury and not hold Aquatic Solutions Physical Therapy responsible for any and all injury or damage resulting from the use of the Shower Facilities.
>
> 2. I understand that there are no personnel, surveillance or security provided in the Shower Facilities to protect me from third parties or other risks i.e. slip/fall, and I enter and use the Shower Facilities at my own risk.
>
> 3. I understand that I have the ability to bring an individual to assist in the Shower Facilities, however one will not be provided by Aquatic Solutions Physical Therapy.
>
> 4. I acknowledge that I will abide by all rules and regulations governing the use of the Shower Facilities.
>
> **OR**
>
> I decline to agree to terms 1-4, I understand that Aquatic Solutions Physical Therapy has the right to refuse usage of Shower Facilities due to safety concerns if I decline to the above terms.

Plaintiff did not mark the empty box next to the "I decline to agree" option, but instead signed the Shower Facility Usage Liability Waiver and dated her name at the bottom of the page, thus signifying her agreement to the waiver.

In light of these facts, defendant argued that it was entitled to summary disposition for the following four reasons. First, plaintiff cannot establish the existence of a hazard beyond mere conjecture because she did not observe a puddle of water on the floor before slipping and falling, and its expert opined that a puddle of 18 to 22 inches in diameter could have been created from the "shed water" from plaintiff's body when she was on the floor. Second, plaintiff cannot establish the premises-liability element of notice because defendant's employee "testified that the shower facility was cleaned before Plaintiff entered it, and no water was on the floor by the time

-2-

Plaintiff arrived."[1]  Third, plaintiff cannot establish the premises-liability element of causation because, as explained earlier, "Plaintiff has failed to establish—beyond mere speculation—the existence of any water on the ground before she entered the shower stall . . . ."  Fourth, plaintiff waived her right to sue for injuries sustained in the shower room when she signed the above-quoted waiver.

In response, plaintiff argued that defendant knew that the floor of its shower room was potentially hazardous and slippery, given that one of its employees applies "an anti-slip formula" once every few months; that defendant failed to mitigate the hazard by, for example, placing mats outside the shower door; and that she did not waive her right to sue for her injuries sustained in the shower room.[2]  With regard to the waiver argument, plaintiff contended, in relevant part:

> In Michigan, the enforceability of liability waivers can be challenged based on the distinction between ordinary negligence and gross negligence. . . .
>
> Michigan law recognizes the distinction between ordinary negligence and gross negligence.  If the facility's failure to clean the water off the floor is deemed grossly negligent—meaning it showed a substantial lack of concern for the safety of its patients—then the waiver is not enforceable.  The Michigan Court of Appeals has held that gross negligence is not protected by waivers.
>
> Courts may refuse to enforce waivers that undermine public policy.  In the context of healthcare, allowing a facility to avoid liability for a failure to maintain a safe environment could be seen as contrary to public interest, particularly when it pertains to patient safety.  Furthermore, waivers must be reasonable and not overly broad.  If a waiver attempts to release the facility from liability for its own

---

[1] Terms such as "shower facility," "shower room," and "shower stall" are used interchangeably by the parties.  Moreover, while not entirely clear from the record, it appears that the capitalized term "Shower Facilities" similarly refers to a singular shower room, although it is irrelevant for the purposes of this case whether defendant has multiple shower rooms.  One of defendant's employees testified about the shower room as follows:

> The shower room is a one-person -- generally, it's like for one person, or someone that would assist -- it has -- it's a nice-size room.  The patient will go in.  They'll shower off.  They have a locker.  They lock themselves in there for privacy.  It's -- it's like a one-person shower room.  But if -- if the person needs help, there's enough room for another person or two to get in there and help them out.

[2] Plaintiff's response includes an unexplained photograph that presumably is a photograph of the shower room in which she was injured.  The photograph indicates that a mat completely covers the shower itself and extends about a foot outside the shower.  In addition, a second mat is placed in the middle of the shower, such that a person showering would typically stand on two mats.  The bench is placed a few feet outside the shower, such that a person would have to walk on the flooring itself, without a mat, for one or two feet to reach the bench.  There also is a handrail on the wall, although it would not fully assist the person walking from the shower to the bench.

negligence, especially in maintaining a safe environment, it may be deemed unconscionable and therefore unenforceable.

\* \* \*

In our case, the Defendant's conduct was grossly negligent. Defendant's failure to maintain floors that are not slippery and free from water or other hazardous conditions is a clear case of **gross negligence**. Given the inherent risks associated with water-based therapy, and a shower that patients are required to use, the business has a responsibility to take proactive and effective measures to ensure that the environment is safe for its clients. By neglecting to implement proper maintenance procedures, fail to use appropriate non-slip flooring, and appropriate use of anti-slip formulas and allowing hazardous conditions to persist, Defendant has exhibited a **serious disregard for patient safety**, making it liable for any resulting accidents or injuries. [Emphasis in original.]

At the motion hearing, the parties argued consistent with their respective briefs, and the trial court indicated that it would take the matter under advisement.[3] A few weeks later, the trial court issued its 14-page opinion and order granting summary disposition in favor of defendant, reasoning first that plaintiff established a question of fact as to whether a hazard existed because "[a]lthough Plaintiff admits she did not see the puddle prior to allegedly slipping in it, this does not mean it did not exist. Moreover, . . . the Court finds that reasonable minds could differ whether the lack of mats outside of the shower stall created a dangerous condition on the date of the incident." Second, plaintiff established a question of fact as to whether defendant had notice of the alleged hazard because, as the trial court explained previously, "there is a question of fact regarding whether Defendant's actions created a dangerous condition in this case," so "there is also a question of fact whether knowledge was imputed to the Defendant." Third, plaintiff established a question of fact as to causation because "[i]n addition to Plaintiff's personal observations regarding the incident, Plaintiff has provided circumstantial evidence regarding the alleged dangerous condition created by Defendant, i.e., the application of the anti-slip formula and lack of mats outside the shower stall."

Nonetheless, despite ruling in plaintiff's favor on these three issues, the trial court concluded that defendant was entitled to summary disposition because plaintiff signed a waiver before using the shower room:

Lastly, Defendant argues that Plaintiff waived her right to sue for injuries sustained in Defendant's shower facilities because she signed a contractual waiver of liability of any claim of injury arising out of her use of Defendant's facilities.

---

[3] Plaintiff's counsel began his argument by addressing the waiver issue:

Well, first, the waiver issue, if he's going to give such a waiver. However, for public policy reasons (inaudible) may be applied to pure ordinary negligence, and the question is was defendant's negligence greater than ordinary negligence and at most gross negligence. Our position is that it does.

Plaintiff argues that a party may contract against liability for harm caused by ordinary negligence, but not gross negligence. Plaintiff argues Defendant was grossly negligent in its failure to maintain floors that are not slippery and free from water of hazardous conditions.

* * *

It is undisputed that Plaintiff signed the Shower Facility Usage Liability Waiver on July 20, 2022. In doing so, she expressly agreed to assume the risk of injury and not hold Defendant liable for "any and all injury or damage" resulting from her use of the shower facilities. She agreed that she would enter and use the shower facilities at her own risk. She further agreed that she had the ability to bring an individual to assist in the shower facilities.

* * *

The Court is unconvinced that a reasonable finder [of] fact construing the evidence in a light most favorable to Plaintiff could conclude that Defendant engaged in "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." As such, Plaintiff's waiver precludes her from bringing suit against Defendant as a result of this incident. Therefore, Defendant is entitled to judgment as a matter of law. [Citations omitted.]

Plaintiff moved for reconsideration citing, for the first time, *Cudnik v William Beaumont Hosp*, 207 Mich App 378, 390; 525 NW2d 891 (1994), in which this Court held that "an exculpatory agreement executed by a patient before treatment is not enforceable to absolve a medical care provider from liability for medical malpractice and other acts of negligence related to a patient's medical care. Agreements such as the one involved in the case at bar are clearly against public policy." Plaintiff asserted that the trial court should grant her motion for reconsideration because the waiver in this case, as with the waiver in *Cudnik*, is void as against public policy.[4]

The trial court denied the motion for reconsideration, reasoning that "this argument was available to Plaintiff at the time she filed her response to Defendant's motion, but she failed to raise it." Thus, the trial court concluded that "Plaintiff has not demonstrated any palpable error committed by this Court . . . ."

This appeal followed. On appeal, plaintiff argues that her signed waiver is void as against public policy under *Cudnik* and that she properly raised this issue in the trial court. If so, the trial court erred by dismissing this case on the basis that defendant was not grossly negligent because defendant still may be liable under typical premises-liability principles. Plaintiff alternatively argues that she established a question of fact as to gross negligence. Defendant responds that plaintiff did not properly raise or preserve her public-policy argument in the trial court and,

---

[4] Plaintiff's counsel acknowledged in the motion for reconsideration that *Cudnik* was not identified on a timely basis.

regardless, it is meritless because *Cudnik* involved medical treatment, whereas this case involves the condition of the premises. Defendant also argues that it was not grossly negligent, and the trial court should be affirmed on the three alternate grounds, which the trial court rejected, that plaintiff did not establish a question of fact as to the existence of a hazard, notice, and causation.

## II. STANDARD OF REVIEW

"We review de novo a trial court's decision to grant or deny a motion for summary disposition." *Chisholm v State Police*, 347 Mich App 646, 651-652; 16 NW3d 563 (2023).

"[A] cause of action may be barred under MCR 2.116(C)(7) where a valid release of liability exists between the parties." *Johnson v Mich Minority Purchasing Council*, 341 Mich App 1, 10; 988 NW2d 800 (2022). "When reviewing a motion under MCR 2.116(C)(7), the trial court must accept as true all of the plaintiff's well-pleaded factual allegations and construe them in favor of the plaintiff unless disputed by documentary evidence submitted by the moving party." *Norman v Dep't of Transp*, 338 Mich App 141, 146; 979 NW2d 390 (2021). "If no facts are in dispute, or if reasonable minds could not differ regarding the legal effect of the facts, the question whether the claim is barred . . . is an issue of law for the trial court to decide." *Id*. at 146-147.

"A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the claim and is properly granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Chisholm*, 347 Mich App at 652. "When reviewing the trial court's order granting or denying a motion under MCR 2.116(C)(10), we consider the documentary evidence in the light most favorable to the nonmovant." *Id*. "A genuine issue of material fact exists when the record leaves open an issue on which reasonable minds might disagree." *Id*.

## III. PUBLIC POLICY

Plaintiff first argues that her signed waiver is void as against public policy under *Cudnik* and that she properly raised this issue in the trial court.[5] We disagree that the waiver is void as against public policy.[6]

---

[5] Plaintiff also briefly suggests, for the first time on appeal, that defendant violated the Americans with Disabilities Act (ADA), 42 USC 12101 *et seq*., because it failed to accommodate her physical disabilities. This issue, however, was not raised below, so it is not preserved for review. See *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020). Regardless, we briefly note that there is nothing in the record to suggest that plaintiff requested reasonable modifications under the ADA. See *PGA Tour, Inc v Martin*, 532 US 661, 682; 121 S Ct 1879; 149 L Ed 2d 904 (2001). Thus, we will not further address this issue.

[6] Generally, issues must be raised in or decided by the trial court to be preserved for review. *Glasker-Davis*, 333 Mich App at 227. "Where an issue is first presented in a motion for reconsideration, it is not properly preserved." *Vushaj v Farm Bureau Gen Ins Co of Mich*, 284 Mich App 513, 519; 773 NW2d 758 (2009).

A premises-liability claim, such as the slip-and-fall claim maintained by plaintiff here, is a type of negligence claim. See *Kandil-Elsayed v F & E Oil, Inc*, 512 Mich 95, 110; 1 NW3d 44 (2023). "All negligence actions, including those based on premises liability, require a plaintiff to prove four essential elements: duty, breach, causation, and harm." *Id*. "It is not contrary to this state's public policy for a party to contract against liability for damages caused by its own ordinary negligence." *Skotak v VicTanny Int'l, Inc*, 203 Mich App 616, 617-618; 513 NW2d 428 (1994).[7] Thus, for example, in *Skotak*, this Court upheld the gym member's signed waiver protecting the gym against claims for, essentially, "slip and fall injuries or injuries sustained as a result of improper use of fitness equipment." *Id*. at 619. See also *Toro v Fitness Int'l LLC*, 150 A3d 968, 974 (Pa Super Ct, 2016) (upholding a signed waiver in a slip-and-fall case against a gym because "[w]here, as here, an individual is engaged in a voluntary athletic or recreational activity, the Supreme Court of Pennsylvania has held that an exculpatory clause in a contract for use of facilities is not contrary to public policy").

On appeal, plaintiff argues that the waiver at issue is void as against public policy under *Cudnik*.[8] In *Cudnik*, this Court concluded that a waiver signed by a hospital patient purporting to relieve the hospital of liability for medical malpractice was void as against public policy. *Cudnik*, 207 Mich App at 384-387. This Court reasoned that "[t]he overwhelming majority of other jurisdictions that have addressed this question have held that such agreements are invalid and unenforceable because medical treatment involves a particularly sensitive area of public interest," *id*. at 385, the hospital presented the patient with "the standardized contract of exculpation, without any provision for some other type of protection against negligence," *id*. at 387, and the patient "placed himself under the control of [the] hospital, subject to the risk of carelessness by the hospital or its agents," *id*. Thus, this Court held, "the exculpatory agreement in this case is contrary to public policy. The exculpatory agreement constitutes a contract of adhesion, and is unenforceable." *Id*. (footnote omitted). In other words, this Court explained, "an exculpatory

---

Arguably, as with the ADA issue, this issue also is not preserved for our review. Plaintiff did not raise this issue, i.e., the issue of public policy under *Cudnik*, before the trial court until her motion for reconsideration. Rather, plaintiff argued in her response to defendant's motion for summary disposition that her signed waiver does not control the outcome of this case because defendant was grossly negligent. And, plaintiff similarly argued as much during the motion hearing. Nonetheless, given that this issue presents a question of law and no pertinent facts are disputed by the parties, and given that plaintiff did present the issue to the trial court, albeit in an untimely manner, we will nonetheless exercise our discretion to address it. See *Steward v Panek*, 251 Mich App 546, 554; 652 NW2d 232 (2002).

[7] While this Court generally speaks in terms of "ordinary negligence" and "gross negligence" when discussing a waiver of liability, such a waiver applies to premises-liability claims as well. See *Skotak*, 203 Mich App at 619. See also *Stavropoulos v fLipSpot Gymnastics & Cheer, LLC*, unpublished per curiam opinion of the Court of Appeals, issued February 24, 2025 (Docket No. 369891).

[8] Plaintiff does not identify any other authority, other than irrelevant ADA law, to suggest that the waiver is void as against public policy. Nor does plaintiff argue that the waiver is void on other grounds, such as fraud. See *Skotak*, 203 Mich App at 618. Thus, we limit our discussion to *Cudnik*.

agreement executed by a patient before treatment is not enforceable to absolve a medical care provider from liability for medical malpractice and other acts of negligence related to a patient's medical care." *Id*. at 390.

Notwithstanding *Cudnik*, it is well-settled that "the general rule of contracts is that competent persons shall have the utmost liberty of contracting and that their agreements voluntarily and fairly made shall be held valid and enforced in the courts." *Bronner v Detroit*, 507 Mich 158, 165-166; 968 NW2d 310 (2021) (cleaned up). "An unambiguous contract term must be enforced as written unless contrary to public policy." *Patel v FisherBroyles, LLP*, 344 Mich App 264, 272; 1 NW3d 308 (2022). But, "where there are definite indications in the law of some contrary public policy, the contract provision must yield to public policy." *Bronner*, 507 Mich at 166 (quotation marks and citations omitted). "However, a 'public policy' clear enough to force the rescission of an otherwise valid contract must come from objective sources, not from individual judges' subjective views." *Gavrilides Mgmt Co, LLC v Mich Ins Co*, 340 Mich App 306, 316; 985 NW2d 919 (2022), citing *Terrien v Zwit*, 467 Mich 56, 66-69; 648 NW2d 602 (2002). "Ideally, the best source of public policy is the Legislature." *Gavrilides Mgmt*, 340 Mich App at 316. More generally, "such a policy must ultimately be clearly rooted in the law." *Terrien*, 467 Mich at 67.

Under general contract principles, the waiver here was enforceable. Both parties were competent to enter a contract, the waiver provided options to plaintiff, there is no evidence that plaintiff signed under duress or fraud, and there are no indicia of an unlawful adhesion contract. See *Rory v Continental Ins Co*, 473 Mich 457, 490-491; 703 NW2d 23 (2005); *Rayford v American House Roseville I, LLC*, ___ Mich ___, ___; ___ NW3d ___ (2025) (Docket No. 163989); slip op at 18-19.

Nonetheless, plaintiff argues that the waiver violated public policy. In doing so, plaintiff recognizes that public policy must come from objective sources, like statutes or regulations, and not from the subjective views of the judiciary. *Terrien*, 467 Mich at 66-67. Yet, in making her argument, plaintiff solely relies on *Cudnik* as establishing the public policy that conflicts with the waiver. *Cudnik*, however, involved a waiver of medical malpractice, and did not concern a waiver of premises liability.[9] To this point, *Cudnik* held that "an exculpatory agreement executed by a patient before treatment is not enforceable to absolve a medical care provider from liability for medical malpractice and other acts of negligence related to a patient's medical care. Agreements such as the one involved in the case at bar are clearly against public policy." *Cudnik*, 207 Mich App at 390. In other words, *Cudnik* prohibits waivers of liability for negligence as it relates to medical care. See *id*.[10]

---

[9] Claims of medical malpractice typically "pose questions of medical judgment." See *Potter v McLeary*, 484 Mich 397, 414; 774 NW2d 1 (2009). Thus, *Cudnik* presumptively did not involve a routine slip-and-fall case or other such facts that are within common knowledge and experience.

[10] In fact, it is arguable that *Cudnik* cannot even be relied upon for this proposition. In *Paul v Lee*, 455 Mich 204, 208 n 2; 568 NW2d 510 (1997), overruled on other grounds by *Smith v Globe Life Ins Co*, 460 Mich 446; 597 NW2d 28 (1999), our Supreme Court "view[ed] the language in *Cudnik* suggesting that all covenants not to sue or releases from liability in the context of medical treatment

-8-

Here, in contrast, the waiver did not relate to medical care or treatment. Instead, and unlike the waiver in *Cudnik*, the waiver existed precisely because defendant would not be assisting plaintiff in the shower, as that was not part of the physical therapy provided by defendant. Recognizing that some patients may need assistance if they choose to use the shower, the waiver contained an agreement that plaintiff could bring a third party to assist her in the shower should she need it. But, in signing the waiver, plaintiff disclaimed any liability on behalf of defendant for her use of the shower facilities. Again, as noted, our courts have upheld waivers relating to premises liability. See *Skotak*, 203 Mich App at 619. Thus, as *Cudnik* involved the waiver of medical-malpractice claims, and the right to bring medical-malpractice claims, and whereas the waiver signed by plaintiff here did not address the waiver of liability for any of the physical therapy she was to receive, *Cudnik* does not support plaintiff's argument.[11]

Accordingly, we conclude that the waiver is not void as against public policy under *Cudnik*. Further, because plaintiff does not cite any other grounds on which the waiver would be void as against public policy, see *Terrien*, 467 Mich at 66, we uphold its application here and conclude that it protects defendant against plaintiff's premises-liability claim.

IV. GROSS NEGLIGENCE

Plaintiff next argues that, even if the waiver protects defendant against premises liability under principles of ordinary negligence, it does not protect defendant against gross negligence. And, plaintiff argues, defendant committed gross negligence in this case. We disagree.

"A contractual waiver of liability . . . serves to insulate against ordinary negligence, but not gross negligence." *Xu v Gay*, 257 Mich App 263, 269; 668 NW2d 166 (2003). "Grossly negligent conduct must be conduct that is substantially more than negligent." *Bellinger v Kram*, 319 Mich App 653, 659-660; 904 NW2d 870 (2017) (quotation marks and citation omitted). "Gross negligence is defined as conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." *Tarlea v Crabtree*, 263 Mich App 80, 90; 687 NW2d 333 (2004) (quotation marks and citation omitted). "Simply alleging that an actor could have done more is insufficient under Michigan law, because, with the benefit of hindsight, a claim can always be made that extra precautions could have influenced the result." *Id*.

The facts of this case do not demonstrate the requisite lack of concern for gross negligence. Rather, the photographs of the shower stall indicate that one mat covers the entire shower itself

---

are invalid and unenforceable, even those involving nonessential, nonlife threatening medical treatment, as dicta." Therefore, *Cudnik* does not necessarily stand for the proposition that all waivers between a patient and a medical provider relating to medical treatment are void as against public policy. However, as explained herein, even if *Cudnik* does stand for that proposition, it would not control the outcome of this case.

[11] Arguably, the physical therapy here was more akin to gym services than the medical care provided by a hospital as in *Cudnik*, such that this case might fall within the rule of *Skotak* and *Toro* for that additional reason. However, we do not ground our decision today in that reasoning.

and extends outward by about a foot,[12] while a second mat is placed in the middle of the shower. There also are handrails both inside the shower and immediately outside the shower. In addition, one of defendant's employees testified that she regularly cleaned and sanitized the floor of the shower room before a patient used it,[13] and another employee testified that he applied an anti-slip formula to the floor once every few months. While plaintiff takes issue with the fact that the anti-slip formula possibly was applied in the mornings before patients arrived, rather than over the weekend to allow the formula more time to cure, the fact remains that defendant actively attempted to minimize the potentially slippery nature of the floor. Moreover, defendant informed its patients via the one-page waiver form itself that use of the shower room could potentially be dangerous for those who are not physically capable of using it, and that in such instances, other measures should be taken by the patient (such as using an assistant). Under these circumstances, even if defendant could have further improved the safety of the shower room by, for example, covering more of the floor with a rubber mat, its conduct did not rise to the level of gross negligence. The trial court correctly reached this conclusion.

## V. CONCLUSION

We affirm the trial court's ruling that plaintiff failed to establish a genuine issue of material fact regarding gross negligence. Moreover, her signed waiver is not void as against public policy. Therefore, we affirm the trial court's grant of summary disposition in favor of defendant.[14]

/s/ Michael J. Riordan
/s/ Christopher M. Murray
/s/ Allie Greenleaf Maldonado

---

[12] One of defendant's employees briefly testified that there is not a mat outside the shower. However, this may have been a reference to the fact that there is not a mat *entirely* outside the shower, as the photograph on page four of plaintiff's response to defendant's motion for summary disposition, as well as the images on pages 11 and 12 of plaintiff's brief on appeal, clearly indicate that a mat extends outward from the shower by about a foot, if not more.

[13] The parties dispute whether that cleaning occurred before plaintiff used the shower room when she was injured. Defendant's employee specifically recalled doing so during her deposition because "it was really slow" that day, while plaintiff claimed in her deposition that a receptionist apologized to her shortly after she fell for not cleaning the shower room beforehand. Regardless, plaintiff does not dispute that defendant regularly cleaned the shower room as a general matter.

[14] Having decided the appeal on these grounds, we need not address defendant's alternative arguments that plaintiff failed to establish a question of fact concerning the existence of a hazard, notice, and causation.