*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MUZAFER ISOVSKA,

      Plaintiff-Appellant,

v

LEANA FITZPATRICK, USA UNDERWRITERS, PROGRESSIVE MARATHON INSURANCE COMPANY, and MICHIGAN AUTOMOBILE INSURANCE PLACEMENT FACILITY,

      Defendants-Appellees.

FOR PUBLICATION
October 30, 2025
8:58 AM

No. 368902
Wayne Circuit Court
LC No. 22-004866-NI

Before: CAMERON, P.J., and MURRAY and KOROBKIN, JJ.

MURRAY, J.

In yet another appeal[1] arising from a claim brought pursuant to the no-fault act, MCL 500.3101 *et seq*., plaintiff appeals of right the November 20, 2023 default judgment entered against defendant Leana Fitzpatrick. USA Underwriters (USAU), Progressive Marathon Insurance Company, and the Michigan Automobile Insurance Placement Facility (MAIPF) are also defendants. On appeal, plaintiff challenges the trial court's various orders granting the separate

---

[1] "Whether the no-fault act has lived up to its billing is the subject of an ongoing and vigorous policy debate." *Meemic Ins Co v Fortson*, 506 Mich 287, 297; 954 NW2d 115 (2020). Despite the Legislature's repeated attempts to reduce litigation over injuries arising from motor vehicle accidents, *Cassidy v McGovern*, 415 Mich 483, 500; 330 NW2d 22 (1982), disavowed on other grounds by 427 Mich 32 (1986) (recognizing a legislative reason for the act was "problems incident to the excessive litigation of motor vehicle accident cases"), Michigan courts are (and have been) swelling with first and third-party claims brought under the act, see *McCormick v Carrier*, 487 Mich 180, 286; 795 NW2d 517 (2010) (MARKMAN, J., dissenting) (reporting the number of no-fault cases filed in 2009). Though it is likely that every circuit court judge could attest to the immense litigation under the act (over 6,700 no-fault cases were filed in the Third Circuit alone in 2024), our records show that last year the largest percentage of civil appeals involved cases filed under the no-fault act.

motions for summary disposition of USAU, the MAIPF, and Progressive under MCR 2.116(C)(10). We reverse in part the order granting USAU's motion for summary disposition, vacate the order granting Progressive's motion for summary disposition, and affirm the order granting the MAIPF's motion for summary disposition.

## I. BACKGROUND

The material facts submitted to the trial court were essentially undisputed, and arose from a motor vehicle accident that occurred when plaintiff, driving a Ford Focus, was struck by Fitzpatrick. Aside from what vehicle she was driving, the facts of the accident are not at issue. What is at issue are the two auto insurance policies held by plaintiff and her daughter, Brianna Isovska, and how those policies interact with each other and the no-fault act.

Plaintiff was the named insured under a no-fault policy with USAU, and the vehicle insured under that policy was a Toyota Yaris. Brianna was listed as a lienholder on the Yaris, but she was an excluded driver under the USAU policy. Brianna had a no-fault policy with Progressive, which listed Brianna as the named insured, and the Focus as the vehicle insured under the policy. The Focus was registered to both plaintiff and Brianna, with both having the same Dearborn address.

After the accident plaintiff made a claim for no-fault benefits, and subsequent to its investigation, USAU denied coverage on the basis that the Ford Focus was "not a listed vehicle on the [USAU] policy[.]" For its part, Progressive sent undated correspondence to Brianna informing her that there would be no coverage for any claims arising from the accident and that the policy was rescinded on the basis of fraud or misrepresentation. According to Progressive, when Brianna procured the policy she failed to identify plaintiff as a resident relative, which was a material misrepresentation because Progressive would not have issued the policy as written, and would have charged an increased premium of 10.3%. The no-fault policy was rescinded on November 5, 2021, and Progressive refunded the policy premiums to Brianna. Plaintiff then applied for PIP benefits through the Michigan Assigned Claims Plan (MACP), but that claim for benefits was also denied.

Plaintiff subsequently filed suit in circuit court, eventually litigating an eight-count second amended complaint, where she alleged negligence against Fitzpatrick and sought uninsured (UM), underinsured (UIM), and personal protection insurance (PIP) benefits against USAU and Progressive, and PIP benefits from the MAIPF. After discovery, all defendants (except Fitzpatrick) separately moved for summary disposition, though some of their arguments were interrelated.

USAU moved for summary disposition under MCR 2.116(C)(8) and (10), arguing that two PIP policy exclusions barred plaintiff's PIP claim because the accident occurred while plaintiff was driving the Focus which, while co-registered in her name, was insured by Progressive. USAU specifically asserted that its policy Exclusion D, pertaining to PIP coverage, did not conflict with the provisions of the no-fault act and that plaintiff was still able to recover PIP benefits against Progressive or the MAIPF. Alternatively, USAU argued that its policy Exclusion E barred plaintiff's PIP claim if the court concluded that the Progressive policy should be rescinded as to plaintiff because plaintiff would then be the registrant of an uninsured vehicle (the Focus), and Exclusion E, consistent with the statutory language of MCL 500.3113(b), barred the recovery of

PIP benefits for the registrant of a motor vehicle who did not maintain security for the vehicle. Turning to plaintiff's claim for UM benefits, USAU noted that Exclusion A specifically excluded the recovery of UM benefits because plaintiff was driving the Focus, which was not covered under the terms of the insurance policy. Asserting that its PIP exclusions were consistent with the no-fault act, and that the UM exclusion was an "absolute bar" to plaintiff's claim for UM coverage, USAU sought summary disposition of plaintiff's first-party claims in their entirety. Both plaintiff and Progressive opposed this motion.

In ruling on the portion of USAU's motion brought under MCR 2.116(C)(8), the trial court first determined that plaintiff had pled a legally sufficient claim. The trial court then noted that plaintiff was driving the Focus, coregistered to both plaintiff and Brianna, when the motor vehicle accident occurred, and that plaintiff was the named insured on the USAU policy, but the vehicle insured on the USAU policy, the Toyota Yaris, was not the one involved in the accident. In granting the motion, the trial court reasoned, in part:

> This Court finds that there's no genuine issue of material fact that the USA[U] policy covered the plaintiff for [PIP] and UM benefits when she was operating the Yaris. The Court finds there is no genuine issue of material fact that the Yaris was not involved in this accident. The vehicle involved in this accident case was a 2013 Ford Focus which was co-owned and registered in the plaintiff's name but was not an, quote, "Insured motor vehicle", unquote, on the USA[U] policy, exclusion applies.

> This Court further finds that the uninsured motorist portion of the USA[U] policy does not apply but there is no genuine issue of material fact that the 2013 Ford Focus was, quote "Owned", unquote, by the plaintiff and that Focus was not insured for USA[U]'s coverage under the USA[U] policy. This Court agrees with USA[U] that its UM [c]overage through [USAU] for plaintiff on a 2013 Ford Focus that was insured with Progressive [sic].

Progressive subsequently filed its motion for summary disposition regarding rescission, arguing that Brianna had engaged in fraud in the procurement with respect to the Progressive policy because she listed herself as the only driver on the policy, despite the fact that plaintiff was an unnamed driver and resident relative who also ought to have been named on the policy, especially because she was a co-registrant of the vehicle and operated it on a regular basis. Therefore, on the basis of an antifraud provision in its no-fault policy, Progressive sought to rescind the no-fault policy as to plaintiff because the alleged misrepresentation was material, and had it known that plaintiff was an unnamed driver, it would not have issued the policy, or alternatively, it would have charged an increased premium of 10.3%. Because of Brianna's material misrepresentation, Progressive voided the subject policy *ab initio*, effective the date of the policy inception, and refunded Brianna's premiums. Progressive also disputed whether plaintiff was an innocent third party, given that she was Brianna's mother, a resident-relative of Brianna's, and stood to benefit from the fraudulently-procured policy. Citing *Pioneer State Mut Ins Co v Wright*, 331 Mich App 396; 952 NW2d 586 (2020), Progressive contended that a balancing of the equities weighed in favor of its rescission of the no-fault policy as to plaintiff. In her response, plaintiff argued that she was an innocent third party and that the balance of equities favored coverage and recovery of her PIP benefits.

The MAIPF then filed its motion for summary disposition under MCR 2.116(C)(10), arguing that because plaintiff was covered under Progressive's no-fault policy as a relative domiciled in the same household, Progressive was responsible for her PIP benefits, so she could not pursue PIP benefits from the MAIPF under MCL 500.3172(1). Additionally, the MAIPF argued that if the Progressive policy were rescinded as to plaintiff, and plaintiff was found to not have any no-fault insurance at the time of the motor vehicle accident, she would not be entitled to recover against the MAIPF under MCL 500.3173. Both plaintiff and Progressive opposed the MAIPF motion.

The trial court held a hearing on the dual motions for summary disposition. In ruling on the motions, the trial court noted that all three remaining parties agreed that plaintiff was a co-registrant on the Focus, a fact that the trial court determined to be "critical" to its analysis, and that plaintiff was a resident relative of Brianna, but that Brianna had not made that disclosure to Progressive. The trial court characterized Brianna's misrepresentation as material because of the uncontroverted affidavit of Progressive's litigation underwriting specialist, and held that plaintiff was not an innocent third party because, as the co-registrant of the Focus and Brianna's resident relative, plaintiff "was a party to the misrepresentation by her daughter as to the Ford Focus." The trial court granted both motions, reasoning in part:

> This, of course, obviously leads to a very tough result, as the co-registrant of an uninsured vehicle, because the [Progressive] policy is void ab initio. Under MCL 500.3113(B), Ms. Isovska is not entitled to PIPP [sic] benefits because she was a registrant of a motor vehicle involved in an accident to which the required security was not in [effect.] As I indicated earlier, and the MAIPF explained it clearly, she either goes through Progressive, and there was no policy through Progressive because it was void ab initio, or she has violated MCL 500.3101. So the Motion of both defendants for summary disposition is granted.

Plaintiff subsequently moved for a default judgment against Fitzpatrick in the amount of $250,000, which the trial court granted. This appeal followed.

## II. ANALYSIS

Because each motion was filed and decided separately, we will first set forth the controlling standards of review, and then address each motion under the governing standards.

## A. STANDARDS OF REVIEW

This Court reviews the trial court's decision on a motion for summary disposition de novo. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 229; 964 NW2d 809 (2020). In *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019), the Court explained the standard for resolving a motion brought under MCR 2.116(C)(10):

> A motion under MCR 2.116(C)(10) . . . tests the *factual sufficiency* of a claim. *Johnson v VanderKooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. *Id*. A motion

under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5; 890 NW2d 344 (2016). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Johnson*, 502 Mich at 761 (quotation marks, citation, and brackets omitted).[2]

---

[2] In her brief on appeal plaintiff relies in part on an outdated and overruled summary disposition (actually summary judgment under the 1963 court rules) standard, arguing that under MCR 2.116(C)(10), the trial court must deny a motion if "a record might be developed that will leave open an issue upon which reasonable minds could differ," citing *Linebaugh v Berdish*, 144 Mich App 750, 753-754; 376 NW2d 400 (1985). Yet it has been more than 25 years since the Supreme Court (1) explicitly recognized that that standard was inapplicable under the 1985 Michigan Court Rules, and (2) reversed the cases citing to that standard. Indeed, in *Smith v Globe Life Ins Co*, 460 Mich 446, 455 n 2; 597 NW2d 28 (1999), the Court was very specific in holding that the old standard, requiring denial of a motion if a record "might be developed" that could create a question of material fact, was no longer viable:

> We take this occasion to note that a number of recent decisions from this Court and the Court of Appeals have, in reviewing motions for summary disposition brought under MCR 2.116(C)(10), erroneously applied standards derived from *Rizzo v Kretschmer*, 389 Mich 363; 207 NW2d 316 (1973). These decisions have variously stated that a court must determine whether a record "might be developed" that will leave open an issue upon which reasonable minds may differ, see, e.g., *Farm Bureau Mutual Ins Co of Mich v Stark*, 437 Mich 175, 184; 468 NW2d 498 (1991); *First Security Savings Bank v Aitken*, 226 Mich App 291, 304; 573 NW2d 307 (1997); *Osman v Summer Green Lawn Care, Inc*, 209 Mich App 703, 706; 532 NW2d 186 (1995), and that summary disposition under MCR 2.116(C)(10) is appropriate only when the court is satisfied that "it is impossible for the nonmoving party to support his claim at trial because of a deficiency that cannot be overcome." *Paul v Lee*, 455 Mich 204, 210; 568 NW2d 510 (1997); *Horton v Verhelle*, 231 Mich App 667, 672; 588 NW2d 144 (1998).

> These *Rizzo*-based standards are reflective of the summary judgment standard under the former General Court Rules of 1963, not MCR 2.116(C)(10). See *McCart* [*v J Walter Thompson USA, Inc*, 437 Mich 109, 115 n 4; 469 NW2d 284 (1991)]. Under MCR 2.116, it is no longer sufficient for plaintiffs to *promise to offer* factual support for their claims at trial. As stated, a party faced with a motion for summary disposition brought under MCR 2.116(C)(10) is, in responding to the motion, required to present evidentiary proofs creating a genuine issue of material fact for trial. Otherwise, summary disposition is properly granted. MCR 2.116(G)(4).

> Consequently, those prior decisions of this Court and the Court of Appeals that approve of *Rizzo*-based standards for reviewing motions for summary

-5-

In evaluating a motion under MCR 2.116(C)(10), the trial court may not assess the credibility of witnesses, weigh the evidence, or determine disputed issues of fact, and if evidence that is material conflicts, the trial court should not grant summary disposition under this subpart of the court rule. *Ass'n of Home Help Care Agencies v Dep't of Health & Human Servs*, 334 Mich App 674, 684 n 4; 965 NW2d 707 (2020).

To the extent that we need to review the trial court's application and interpretation of the no-fault act or a no-fault policy, our review is also de novo. *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 507; 885 NW2d 861 (2016). In *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 492 Mich 503, 515; 821 NW2d 117 (2012), the Court explained, in pertinent part, the rules applicable to the interpretation of statutes:

> The primary goal of statutory interpretation is to ascertain the legislative intent that may reasonably be inferred from the statutory language. The first step in that determination is to review the language of the statute itself. Unless statutorily defined, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used. [Quotation marks and citation omitted.]

## B. USAU'S MOTION

In determining whether USAU is responsible for plaintiff's PIP benefits, we must resolve USAU's argument that Exclusions D and E of its no-fault policy, the provisions that it relied on to deny coverage to plaintiff, are valid or applicable. To do so, we turn to the words of the statute, which is the "rule book" for resolving no-fault claims, see *Meemic Ins Co v Fortson*, 506 Mich 287, 297-298; 954 NW2d 115 (2020), and *Rohlman v Hawkeye Security Ins Co*, 442 Mich 520, 524-525; 502 NW2d 310 (1993), and the language of the policy exclusions.

### 1. EXCLUSION D

MCL 500.3114(1) establishes the priority for PIP coverage and provides, in relevant part:

> (1) Except as provided in subsections (2), (3), and (5), a personal protection insurance policy described in [MCL 500.3101(1)] applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motor vehicle accident.

Meanwhile, Exclusion D in USAU's no-fault policy provided, in pertinent part:

---

disposition brought under MCR 2.116(C)(10) are overruled to the extent that they do so.

We recognized this point more than two decades ago in *Grand Trunk Western R, Inc v Auto Warehousing Co*, 262 Mich App 345, 350; 686 NW2d 756 (2004), yet still today we receive briefs that improperly cite these inapplicable standards.

This coverage does not apply to:

* * *

D. Bodily Injury to you:

1) While in, on, getting into or out of; or

2) When struck while not in, on, getting into or out of;

a motor vehicle you own or have registered in your name that is not an insured motor vehicle.

As seen above, MCL 500.3114(1) clearly states that a PIP policy applies "to accidental bodily injury to the *person named in the policy*" who is injured in a motor vehicle accident. (Emphasis added.) The parties do not dispute that plaintiff was a named insured on USAU's policy, nor (at least for this appeal) that she suffered an accidental bodily injury in a motor vehicle accident. Thus, statutorily, plaintiff was eligible for PIP benefits from USAU.

Despite this, USAU contends that because plaintiff was driving the Focus when she was involved in the motor vehicle accident, Exclusion D applied to bar her PIP coverage because the Focus was not a listed vehicle in her policy. The language of Exclusion D, however, is in direct conflict with MCL 500.3114(1). Indeed, USAU's position is undermined by the plain language of the statute and a line of caselaw which illustrates that PIP coverage, consistent with the statutory language of MCL 500.3114(1), follows the insured, as opposed to the insured's vehicle listed on the subject no-fault policy.

The controlling decision is *Lee v Detroit Auto Inter-Ins Exch*, 412 Mich 505, 508-509; 315 NW2d 413 (1982), where the Court considered whether a person injured in a motor vehicle accident that involved a motor vehicle not registered in Michigan could obtain PIP benefits from his own insurer. The plaintiff in *Lee*, an employee of the United States Postal Service, was injured while unloading mail from a government-owned truck. *Lee*, 412 Mich at 508. This Court affirmed the trial court's order holding that the plaintiff was not entitled to benefits because the no-fault act applied only to vehicles that were registered with the state under MCL 257.216. *Id.* The Supreme Court reversed, concluding that under the no-fault act, "persons, not motor vehicles, are insured against loss." *Id*. at 509.

In reaching this conclusion, the Court, quoting MCL 500.3105(1), recognized that there was no statutory language linking the right to recover PIP benefits, or the insurer's obligation to pay them, with a requirement that the motor vehicle be a " 'registered,' " " 'insured,' " or " 'covered' " motor vehicle, which the Legislature could have stated if that was what it intended. *Id*. at 512-513. Instead, under MCL 500.3105(1), the only requirement was that a motor vehicle be used, maintained, or operated as a motor vehicle. *Lee*, 412 Mich at 513. According to the *Lee* Court, MCL 500.3105(1), as well as other provisions of the no-fault act, including MCL 500.3114, reflected the Legislature's intention that an injured person's personal no-fault insurer bear responsibility for PIP benefits regardless of whether its policy covers the motor vehicle involved, or if the vehicle involved is covered by another no-fault policy. The Court explained:

Reference to other provisions of the no-fault act not directly implicated in the issue before us, particularly [MCL 500.3114 and MCL 500.3115], suggests strongly that the Legislature, in its broader purpose, intended to provide benefits whenever, as a general proposition, an insured is injured in a motor vehicle accident, whether or not a registered or covered motor vehicle is involved; and in its narrower purpose intended that an injured person's personal insurer stand primarily liable for such benefits whether or not its policy covers the motor vehicle involved and even if the involved vehicle is covered by a policy issued by another no-fault insurer. [*Lee*, 412 Mich at 515.]

The *Lee* Court emphasized that, "by reason of the combined effect of § 3114(1) and the first clause of both §§ 3114(4) and 3115 . . ., the personal insurer of an injured claimant may stand liable for benefits despite the fact that it has written no coverage respecting any vehicle involved in the accident and indeed that no vehicle involved in the accident has any coverage whatever." *Id*. at 516. As a result, the Court squarely rejected this Court's holding that the Legislature did not intend that the no-fault system would compensate persons when the insured vehicle was not involved in the subject motor vehicle accident. Since *Lee* our Court has recognized that under the act, insurance policies are required to provide coverage to the insured persons, not vehicles. See *Corwin v DaimlerChrysler Ins Co*, 296 Mich App 242, 262-263; 819 NW2d 68 (2012) (providing that " 'PIP coverage protects the person, not the motor vehicle' "), quoting *Amerisure Ins Co v Auto-Owners Ins Co*, 262 Mich App 10, 17; 684 NW2d 391 (2004).

Exclusion D directly contravenes the clear and plain language of MCL 500.3114(1), which again provides that a PIP policy is applicable "to accidental bodily injury *to the person named in the policy* . . . ." (Emphasis added.) As observed in *Lee*, it is the public policy of the no-fault act, as manifested in the plain language of MCL 500.3114(1), that an insured meeting the statutory criteria first turn to their no-fault insurer for the recovery of PIP benefits, regardless of whether the vehicle listed under the policy was involved in the accident. Given that, we conclude that Exclusion D is invalid, and the trial court erred in granting USAU's motion for summary disposition on the basis of Exclusion D.

## 2. EXCLUSION E

USAU also argues that Exclusion E of the policy bars plaintiff's PIP claim, arguing that the effect of Progressive's rescission as to Brianna resulted in plaintiff being a co-registrant of an uninsured vehicle. Exclusion E stated, with respect to PIP coverage:

This coverage does not apply to:

\* \* \*

E. Bodily Injury to the owner or registrant of a motor vehicle or motorcycle involved in the accident if that motor vehicle or motorcycle does not have the security required by Chapter 31 of the Michigan Insurance Code in effect.

Under Exclusion E, coverage is precluded if a motor vehicle involved in the accident "does not have" the security required by the act "in effect."

-8-

The language of Exclusion E is in the present tense, though it seems geared towards providing the same prohibition contained in MCL 500.3113(b), which provides in pertinent part:

> A person is not entitled to be paid personal protection insurance benefits for accidental bodily injury if at the time of the accident any of the following circumstances existed:
>
> * * *
>
> (b) The person was the owner or registrant of a motor vehicle or motorcycle involved in the accident with respect to which the security required by [MCL 500.3101] or [MCL 500.3103] was not in effect.

As noted, USAU argues that plaintiff is not entitled to be paid PIP benefits because she was a co-registrant of a motor vehicle involved in an accident with respect to which the security required by MCL 500.3101[3] was not in effect, and thus Exclusion E applies and bars PIP benefits under the USAU policy. Plaintiff offers two arguments in opposition. First, she argues that under *Wilmore-Moody v Zakir*, 511 Mich 76; 999 NW2d 1 (2023), the legal fiction of rescission between Brianna and Progressive that occurred well after the accident did not mean that, at the time of the accident, the Focus was not actually insured. Second, plaintiff argues that the trial court did not analyze all the factors required by *Pioneer State Mut Ins Co*, 331 Mich App at 410-411, and there were material fact disputes on those factors.

### *WILMORE-MOODY*

In both *Wilmore-Moody* and *Bazzi v Sentinel Ins Co*, 502 Mich 390; 919 NW2d 20 (2018), the Court recognized that the voiding *ab initio* of a contract, as a result of rescission, is a legal fiction that alters the legal relations between the contracting parties, but not necessarily third parties. See *Bazzi*, 502 Mich at 409 ("[A]n insurance policy procured by fraud may be declared void *ab initio* at the option of the insurer. In effect, the insurance policy is considered never to have existed.") (Citations omitted.); *Wilmore-Moody*, 511 Mich at 86 ("[R]escission is a contractual remedy intended to restore *the parties to the contract* to their relative precontract positions." Because defendant "was unaffiliated with the contract, [defendant] may not rely on Everest's chosen contractual remedy to defend against plaintiff's statutory negligence claim."). *Bazzi* was a decision premised on an insurance contract, while *Wilmore-Moody* was based on a

---

[3] MCL 500.3101 provides, in pertinent part:

> (1) Except as provided in [MCL 500.3107d and MCL 500.3109a], the owner or registrant of a motor vehicle required to be registered in this state shall maintain security for payment of benefits under personal protection insurance and property protection insurance as required under this chapter, and residual liability insurance.

statutory third-party claim under MCL 500.3135(2)(c), but both used in part the same contract rescission principle to resolve the respective disputes.

In its discussion of the issue, the *Wilmore-Moody* Court emphasized that, "while rescission is a legal fiction available as a contractual remedy for the defrauded party, it does not alter reality or act as a DeLorean time machine." *Wilmore-Moody*, 511 Mich at 86. In other words, while Michigan courts are free to engage in what the *Wilmore-Moody* Court described as " 'revisionist history' " when granting rescission as a proper contractual remedy, "that legal fiction does not actually create an alternate reality." *Id*., quoting *Esurance Prop & Cas Ins Co v MACP*, 507 Mich 498, 523; 968 NW2d 482 (2021) (CLEMENT, J., dissenting). Consequently, as to the plaintiff, the fact that a rescission between the parties took place subsequent to the accident did not result in the conclusion that the vehicle was uninsured at the time of the accident. *Wilmore-Moody*, 511 Mich at 88 ("In sum, rescission of an insurance policy is a contractual remedy between the insured and insurer. It does not operate to alter the past by rendering the insured as having been without no-fault insurance at the time of the accident for purposes of the prohibition contained in MCL 500.3135(2)(c).").

We are somewhat reluctant to apply this principle to Exclusion E, largely because the facts in *Wilmore-Moody* are distinguishable in at least one significant way from those at issue here, and the language of MCL 500.3135(2)(c) is more clearly tied to the time of the accident than is Exclusion E. With respect to the factual difference, unlike the defendant in *Wilmore-Moody* who had no relationship to the contract or misrepresentations, here USAU arguably could benefit from the Progressive policy, as its insured (plaintiff) was a co-registrant of the Focus and a resident relative of Brianna's under MCL 500.3114(1) who could potentially recover PIP benefits from Progressive. Although this benefit is somewhat distant, USAU cannot necessarily be described as "unaffiliated" with the Progressive no-fault policy as was the defendant in *Wilmore-Moody*, who had no relation to the rescinded contract. *Wilmore-Moody*, 511 Mich at 86. Likewise, the *Wilmore-Moody* Court emphasized the language of MCL 500.3135(2)(c), which focused on whether insurance coverage existed "at the time the injury occurred." *Wilmore-Moody*, 511 Mich at 88. Exclusion E is not so specific, though the parties don't argue that Exclusion E is focused on any time other than the time of the accident.

In the end we need not resolve whether this rescission principle applies, for the parties recognize that Exclusion E applies only if the order granting Progressive's motion for summary disposition is upheld on appeal. And, because we conclude below that there are genuine issues of material fact surrounding the rescission of the Progressive policy as to plaintiff, the trial court order granting Progressive's motion must be vacated, as must the order granting USAU's motion based upon Exclusion E.

## BALANCE OF THE EQUITIES

Although plaintiff asserted at oral argument before this Court that she is not seeking benefits from Progressive (though she would be a resident relative under the policy were it not rescinded), whether Exclusion E to the USAU policy applies is dependent on whether Progressive was the insurer of the Focus at the time of the accident. On appeal, Progressive argues that we should affirm the trial court's order holding that the rescission also applied to plaintiff. For two reasons, however, we hold that the trial court erred in granting Progressive's motion for summary

disposition under MCR 2.116(C)(10). First, in concluding that plaintiff was not an innocent third party, the court made an impermissible factual determination on summary disposition that was also not supported by the evidence. Second, the trial court erred in not weighing all the relevant equities before rescinding the Progressive policy as to plaintiff.

*Bazzi* held that a no-fault policy may be rescinded as to an innocent third party if the trial court, after balancing the relevant equities, decides that remedy is warranted. *Bazzi*, 502 Mich at 410-411. Since *Bazzi*, this Court, in *Pioneer State Mut Ins Co*, 331 Mich App at 410-411, adopted a nonexclusive list of factors first articulated by Justice Markman in *Farm Bureau Gen Ins Co of Mich v ACE American Ins Co*, 503 Mich 903, 906-907 (2018) (MARKMAN, J., concurring), that trial courts may consider in balancing the equities between two innocent parties. These five factors are:

> (1) the extent to which the insurer could have uncovered the subject matter of the fraud before the innocent third party was injured; (2) the relationship between the fraudulent insured and the innocent third party to determine if the third party had some knowledge of the fraud; (3) the nature of the innocent third party's conduct, whether reckless or negligent, in the injury-causing event; (4) the availability of an alternate avenue for recovery if the insurance policy is not enforced; and (5) a determination of whether policy enforcement only serves to relieve the fraudulent insured of what would otherwise be the fraudulent insured's personal liability to the innocent third party. [*Pioneer State Mut Ins Co*, 331 Mich App at 411.]

In granting Progressive's motion for summary disposition, the trial court concluded that plaintiff was not an innocent third party "because as the co-registrant of the Ford Focus, and as a resident relative, she was a party to the misrepresentation by her daughter as to the Ford Focus." The trial court did not otherwise elaborate on its ruling on this particular point, which was pivotal to its decision to allow Progressive to rescind the no-fault policy as to plaintiff.

We conclude that a genuine issue of material fact existed as to whether plaintiff "was a party to the misrepresentation by [Brianna] as to the Ford Focus." The trial court's ruling that no genuine issue existed was not supported by the record, as the evidence and its inferences conflicted as to whether plaintiff was a party to Brianna's alleged fraud in the procurement of the Progressive policy. In support of its motion for summary disposition, Progressive included the declaration page from Brianna's no-fault policy, which stated that the policy was effective September 17, 2021, that Brianna was the named insured on the policy, and that there was only one resident residing in Brianna's household.

The trial court ruled that genuine issues of material fact did not exist regarding whether plaintiff was an innocent third party because, as a co-registrant of the Focus and Brianna's resident relative, she was a party to Brianna's misrepresentation to Progressive. The evidence, viewed in the light most favorable to plaintiff, *El-Khalil*, 504 Mich at 160, did not support a conclusion that no factual dispute existed as to whether plaintiff was a party to Brianna's alleged fraud. The parties do not dispute that plaintiff and Brianna were co-registrants of the Focus and that they lived together for several years before the motor vehicle accident. But the existence of that familial and ownership relationship that Brianna and plaintiff shared, in the context of the second factor from *Progressive State Mut In Co*, 331 Mich App at 411, does not alone conclusively establish that

-11-

plaintiff was aware of the fraud, making rescission of the policy as to plaintiff appropriate. And, the evidence that Progressive produced in support of its motion did not show that plaintiff made any misrepresentations to Progressive in the procurement of its no-fault policy, or that she was aware that Brianna was engaging in fraud to procure the policy. Instead, plaintiff's deposition testimony established that Brianna handled the insurance matters pertaining to the family's vehicles, and plaintiff indicated that she was not even clear herself if the Focus was registered in her name.

Put simply, Progressive did not produce evidence in response to plaintiff's evidence to conclusively demonstrate that plaintiff was aware of the alleged fraud. Accordingly, because the evidence did not support a conclusion on summary disposition that plaintiff was a party to Brianna's fraudulent misrepresentations to Progressive, it was error for the trial court to grant summary disposition in favor of Progressive. On remand, if it is subsequently determined that plaintiff was an innocent third party, in determining whether rescission of the policy as to plaintiff is equitable, the trial court must weigh the relevant equities as required by *Bazzi* and *Pioneer State Mut Ins Co*. See *Sherman v Progressive Mich Ins Co (On Reconsideration)*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 364393); slip op at 4 (courts must " 'balance the equities' to determine whether rescission is appropriate"), quoting *Johnson v QFD, Inc*, 292 Mich App 359, 370 n 3; 807 NW2d 719 (2011).[4]

### C. MAIPF'S MOTION

If on remand the trial court determines that plaintiff was an innocent party, and that the equities do not favor rescission as to plaintiff, then the MAIPF would not be responsible for payment of any PIP benefits as plaintiff could recover from USAU. See MCL 500.3172(1)(b), and *Spencer v Citizens Ins Co*, 239 Mich App 291, 301; 608 NW2d 113 (2000) (acknowledging that under the no-fault act, "the Assigned Claims Facility represents the insurer of last priority").

Alternatively, if the trial court comes to the opposite conclusion, the end result would be that the Focus was uninsured at the time of the accident (unless, of course, the trial court decides that *Wilmore-Moody* applies), which would also preclude plaintiff from recovering PIP benefits from the MAIPF, as MCL 500.3172 provides, in pertinent part:

> (1) A person entitled to claim because of accidental bodily injury arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle in this state may claim personal protection insurance benefits through the assigned claims plan if any of the following apply:

> \* \* \*

---

[4] With respect to plaintiff's claim for UM benefits, the trial court held that USAU properly denied plaintiff's claim for UM benefits on the basis of Exclusion A. On appeal plaintiff has not challenged that portion of the trial court's order, so the trial court's order on that point is left undisturbed by this opinion. *Berger v Berger*, 277 Mich App 700, 712; 747 NW2d 336 (2008).

(b) *No personal protection insurance applicable to the injury can be identified.* [Emphasis added.]

Accordingly, the trial court's decision to grant summary disposition in favor of the MAIPF was not erroneous given that on remand both of the potential outcomes would preclude liability on the part of the MAIPF.

## III. CONCLUSION

For these reasons, we (1) reverse the trial court's order granting USAU's motion for summary disposition as to plaintiff's claim for PIP benefits, but affirm the order to the extent it awarded USAU summary disposition on plaintiff's UM claim, (2) vacate the trial court's order granting Progressive's motion for summary disposition and remand for further proceedings on that motion, and (3) affirm the trial court's order granting the MAIPF's motion for summary disposition. No costs to any party. MCR 7.219(A).

/s/ Christopher M. Murray
/s/ Thomas C. Cameron

-13-